**NORTHERN COUNTY MUTUAL INSURANCE CO.,**
**Petitioner,**

**v.**

**Timoteo DAVALOS, Respondent.**

**No. 02–1007.**

Supreme Court of Texas.

Argued Oct. 8, 2003.

Decided July 2, 2004.

Rehearing Denied Sept. 3, 2004.

Robert H. Fugate, George Lankford and Don Martinson, Fanning Harper & Martinson, P.C., Dallas, for Northern County Mutual Insurance Co.

Mark A. Ticer and Claire Ellen Collins, Law Office Of Mark A. Ticer, Dallas, Lynn C. Grebe, Lynn C. Grebe & Associates, Inc., P.C., Bay City, for Timoteo Davalos.

Forrest C. Roan, Winstead, Sechrest & Minick, Austin, for Amicus Curiae The American Insurance Association.

Michael Shane Kimzey, Baker Botts, L.L.P., Houston, for Amicus Curiae Texas Farm Bureau Mutual Insurance Company.

Thomas C. Wright, Wright Brown & Close, LLP, Houston, for Amicus Curiae American International Companies.

Kenneth J. Lambert and Lance Eric Caughfield, Fletcher & Springer, L.L.P., Dallas, for Amicus Curiae Houston General Insurance Company.

Kenneth J. Lambert, Fletcher & Springer, L.L.P., Dallas, for Amici Curiae Tokio Marine & Fire Insurance Company.

Chief Justice PHILLIPS delivered the opinion of the Court.

The automobile liability policy in this case obligated the insurer to provide a defense for covered claims and granted the insurer the right to conduct that defense. The insured, however, refused the insurer's tendered defense because of a disagreement about where the case should be defended. The issue we must decide is whether a disagreement over venue is a sufficient reason for the insurer to lose its right to conduct the defense, while still remaining obligated to pay for it. The court of appeals concluded that it was sufficient, affirming an award of damages against the insurer for breach of the duty to defend. *Northern County Mutual Insurance Company v. Davalos*, 84 S.W.3d 314 (Tex.App.-Corpus Christi 2002). We conclude that this venue impasse was not a sufficient reason to take the contractual right to conduct the defense away from the insurer. Accordingly, we reverse the judgment of the court of appeals and ren-

der judgment that the insured take nothing.

## I

Timoteo Davalos, a resident of Matagorda County, was injured in an automobile accident in Dallas County. Davalos sued the driver of the other car in Matagorda County. The other driver and his wife then sued Davalos and a third driver involved in the accident, but in a separate action in Dallas County. Although Davalos was insured by Northern County Mutual Insurance Company, he turned the Dallas litigation over to the attorneys representing him as a plaintiff in Matagorda County. These attorneys answered the Dallas suit and moved to transfer venue to Matagorda County. The attorneys then notified Northern of the Dallas litigation.

Northern responded in writing to Davalos, stating that it did not wish to hire the attorneys he had selected to defend the Dallas case, that it opposed his pending motion to transfer venue to Matagorda County, and that it had chosen another attorney to defend Davalos in Dallas County. The letter suggested that liability protection under the policy might be threatened if Davalos' personal attorneys did not abandon their venue motion and withdraw, stating that:

> [if your personal attorneys] continue to defend you in the Dallas County lawsuit and continue to pursue the motion to transfer venue, we will take the position that there is no liability protection under the [policy], and the outcome of the Dallas County case will be your personal responsibility.

Northern requested that Davalos instruct his personal attorneys "to withdraw as your attorney of record in the Dallas County case and allow the following attorney to substitute in as your attorney of record and defend you under the terms of your Texas personal automobile liability policy: [providing the name, address and phone numbers of the new attorney]." Northern further advised Davalos that he was free to retain his own attorney, at his own expense, to consult on the Dallas County case and that Northern would cooperate with that attorney to the extent it did not jeopardize the defense. Finally, Northern urged Davalos to take immediate action by consulting with his attorneys and instructing them to cooperate with the attorney named by Northern to handle the defense.

Davalos' attorneys did not withdraw, but they did respond by letter six weeks later. Although this letter is not a part of the record, it is referenced in a second letter from Northern dated March 14, 1997, acknowledging receipt and again advising Davalos of its desire to defend the insured through its named attorney. The second letter further explained that Northern believed venue to be proper in Dallas County because the accident occurred there and because the plaintiff and another defendant resided there.

A week after Northern's second letter, one of Davalos' attorneys wrote to reject Northern's offered defense, advising that he considered Northern's demands to be unconscionable and actionable. The attorney complained that Northern had at best offered only a qualified defense, insufficient to satisfy the full obligations of its duty to defend. The attorney further advised Northern that it could not select defense counsel because of its conflict with Davalos over the venue motion. Finally, the attorney intimated that he expected Northern to pay him to defend Davalos.

Although Davalos refused to comply with Northern's requests, the Dallas litigation was not moved to Matagorda County. Instead, Davalos' Matagorda case was transferred on motion of another party to the 191st District Court in Dallas County,

while the suit against Davalos remained in the 68th District Court of Dallas County. Further, despite Davalos' rejection of its defense, Northern settled the claims against Davalos in the 68th District Court about one year after suit was filed, obtaining a full and final release for its insured at no cost to him.

Prior to this settlement, Davalos sued Northern in Matagorda County, asserting that the insurer had breached its duty to defend in the Dallas County action. In addition to breach of contract, Davalos alleged that Northern had acted in bad faith and had violated the Texas Insurance Code. Both sides moved for summary judgment.

The trial court denied Northern's motion and granted Davalos' motion for partial summary judgment. After the parties stipulated to damages, the trial court rendered a final judgment in Davalos' favor for breach of contract and for violation of article 21.55 of the Texas Insurance Code. Northern appealed to the court of appeals, which affirmed with one justice dissenting. The court held that Northern had breached its duty to defend by insisting that its insured withdraw his motion to transfer venue and had violated article 21.55 by neither accepting nor rejecting the insured's request for a defense in the time required by law. 84 S.W.3d at 318–19. Northern petitioned this Court for review.

## II

Northern argues that it complied fully with its duty to defend. Northern suggests that a coverage dispute is the only type of disagreement that is sufficient to defeat an insurer's contractual right to conduct the defense. See *Farmers Tex. County Mut. Ins. Co. v. Wilkinson*, 601 S.W.2d 520, 522(Tex.Civ.App.-Austin 1980, writ ref'd n.r.e.) (noting apparent conflict of interest when an insurer represents the insured while simultaneously formulating its defense against the insured for noncoverage). Because it never disputed that the collision was covered and because it offered to defend Davalos without a reservation of rights or non-waiver agreement, Northern concludes that Davalos had no right to refuse its defense.

Davalos responds that Northern attached improper conditions to that defense and inappropriately threatened his coverage, thereby forfeiting its right to conduct the defense. Moreover, Davalos submits that his disagreement with Northern about venue was itself a sufficient conflict of interest to defeat Northern's contractual right to conduct his defense. Davalos concludes that Northern remained obligated to pay for his defense because it failed to meet its duty to defend by offering an unconditional defense.

Whether an insurer has the right to conduct its insured's defense is a matter of contract. The Texas Personal Auto Policy here granted Northern that right, providing that the insurer would "settle or defend, as we consider appropriate, any claim or suit asking for [bodily injury or property] damages." The right to conduct the defense includes the authority to select the attorney who will defend the claim and to make other decisions that would normally be vested in the insured as the named party in the case. See *State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 627 (Tex.1998). Under certain circumstances, however, an insurer may not insist upon its contractual right to control the defense. The dispute here is over what those circumstances might be.

In *Traver*, we mentioned this limitation but did not explain it, stating only that an insurer's right of control generally includes the authority to make defense decisions as if it were the client "where no conflict of interest exists." *Id.* Relying on this statement, the court of appeals concluded that the parties' disagreement about venue

here was "an obvious conflict of interest" and that Northern had breached its duty to defend by insisting on its right to control the defense in the face of this conflict. 84 S.W.3d at 318. We disagree.

■ Every disagreement about how the defense should be conducted cannot amount to a conflict of interest within *Traver's* meaning. If it did, the insured, not the insurer, could control the defense by merely disagreeing with the insurer's proposed actions. This is not at all what we contemplated in *Traver*.

Ordinarily, the existence or scope of coverage is the basis for a disqualifying conflict. In the typical coverage dispute, an insurer will issue a reservation of rights letter, which creates a potential conflict of interest. *See* 1 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 4.20 at 369 (4th ed.2001). And when the facts to be adjudicated in the liability lawsuit are the same facts upon which coverage depends, the conflict of interest will prevent the insurer from conducting the defense. *See Id.* at 370–71. On the other hand, when the disagreement concerns coverage but "the insurer defends unconditionally, there is, because of the application of estoppel principles, no potential for a conflict of interest between the insured and the insurer." *Id.* at 369.

■ Other types of conflicts may also justify an insured's refusal of an offered defense. One authority lists four separate circumstances in which the insured may rightfully refuse to accept the insurer's defense: (1) when the defense tendered "is not a complete defense under circumstances in which it should have been," (2) when "the attorney hired by the carrier acts unethically and, at the insurer's direction, advances the insurer's interests at the expense of the insured's," (3) when "the defense would not, under the governing law, satisfy the insurer's duty to defend," and (4) when, though the defense is

otherwise proper, "the insurer attempts to obtain some type of concession from the insured before it will defend." *See* 1 WINDT § 4:25 at 393. Thus, the insured may rightfully refuse an inadequate defense and may also refuse any defense conditioned on an unreasonable, extra-contractual demand that threatens the insured's independent legal rights. Under this latter circumstance, for example, Northern could not have required Davalos to dismiss his Matagorda suit as a condition for defending him, and such a demand would have justified Davalos' rejection.

But here the disagreement concerns the appropriate venue for the defense of a third-party claim, not Davalos' independent right to pursue his own remedy. Davalos argues, however, that this case involves more than a mere venue disagreement, suggesting that Northern turned this disagreement into a coverage dispute by improperly conditioning its defense on Davalos' withdrawal of the motion to transfer. Davalos submits that the venue decision should have been left to the defense attorney selected by Northern. Because the insurer interfered with that decision, Davalos concludes that Northern tendered only a qualified defense. We disagree.

■ Northern's actions did not actually deprive Davalos of the defense attorney's independent counsel on any issue. Davalos did not ask Northern to provide a defense until after his own personal attorneys had filed an answer and moved to transfer venue. Northern nevertheless agreed to defend, asking that its named attorney be substituted as record counsel and that Davalos' personal attorneys withdraw and not pursue the motion to transfer venue. Northern also asked that Davalos act expeditiously to transfer the defense to the new attorney. Davalos did not respond for several weeks and ultimately refused to accept the defense. If

he had accepted the defense, he could have submitted the issue of venue or any other issue to defense counsel for an independent determination. That "lawyer owes unqualified loyalty to the insured, *see Employers Cas. Co. v. Tilley*, 496 S.W.2d 552, 558 (Tex.1973), [and] must at all times protect the interests of the insured if those interests would be compromised by the insurer's instructions." *Traver*, 980 S.W.2d at 628; *cf.* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 134 cmt. d (2000) (directives by party paying for another's legal services must allow for reasonable representation and must be reasonable in scope and character). Of course, it is difficult to imagine a set of circumstances in which a choice of venue might amount to a disqualifying conflict of interest. The county where a covered claim should be defended is a strategic litigation decision that must be made in conducting the insured's defense. The choice of venue should ordinarily have no impact on the insured's legitimate interests under the policy.

In this case, Davalos chose to reject Northern's tender and conduct his own defense because he really did not want the case defended in Dallas County. That was his right. But having rejected the insurer's defense without a sufficient conflict, Davalos lost his right to recover the costs of that defense. Because Northern's offer to defend Davalos in Dallas County satisfied its obligation under the policy, Northern did not breach its duty to defend.

## III

The court of appeals also concluded that Northern violated article 21.55 of the Texas Insurance Code by failing promptly to accept or reject its insured's defense. This statute "establishes procedures for the prompt payment of insurance claims, including the acknowledgment of an insured's notice of a claim." *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex.

2001). It generally requires that an insurer either accept or reject a claim within a prescribed period or explain why it needs more time to investigate. TEX. INS.CODE art. 21.55 § 3. The article further provides for the award of penalties and attorney's fees for its violation:

> In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy, or the beneficiary making a claim under the policy, in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees. If suit is filed, such attorney fees shall be taxed as part of the costs in the case.

*Id.* § 6. "Claim" is defined as "a first party claim made by an insured or a policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract that must be paid by the insurer directly to the insured or beneficiary." *Id.* § 1(3).

Northern argues that the court of appeals erred in affirming the award under article 21.55 because the statute clearly applies only to first-party claims. *See id.* Northern submits that "[a] first-party claim is one in which an insured seeks recovery for the insured's own loss," while a third-party claim is one "in which an insured seeks coverage for injuries to a third party." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 53 n. 2 (Tex.1997). Northern concludes that a request for a defense arises only as part of a third-party claim and thus cannot be within the statute's meaning. *See Hartman v. St. Paul Fire & Marine Ins. Co.*, 55 F.Supp.2d 600, 603–04 (N.D.Tex.1998).

Davalos responds that this Court has already indicated that article 21.55 applies in this type of failure-to-defend case. *See*

*State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 714 (Tex.1996); *accord Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc.,* 215 F.Supp.2d 783, 794 (E.D.Tex.2002); *E & R Rubalcava Constr., Inc. v. Burlington Ins. Co.,* 148 F.Supp.2d 746, 750 (N.D.Tex.2001). Davalos submits that an insured's claim for defense costs under a liability policy is really no different from an insured's claim for property damage under a casualty policy. In either instance, the insured is himself directly seeking a benefit under the policy. Thus, Davalos concludes that the defense owed to him by Northern is, within the contemplation of the statute, a first-party claim contained in a liability insurance policy. *See* Ellen S. Pryor, *Mapping the Changing Boundaries of the Duty to Defend in Texas,* 31 TEX. TECH L.REV. 869, 914 n. 317 (2000).

We conclude that Northern's conduct in this case did not violate the terms of article 21.55, whether or not that statute properly applies to a liability insurer who fails to promptly accept or reject its insured's defense. Shortly after notice of the claim and within the time constraints of the statute, Northern tendered a defense to its insured when it asked Davalos on January 9 to substitute its chosen attorney as his attorney of record. The parties' disagreement about venue did not make that tender equivocal because, as we have seen, Davalos had no right to complain about venue remaining in Dallas County. Thus, we need not determine the scope of this statute to conclude that the court of appeals erred in affirming the award of damages and attorney's fees under it.

For these reasons, we reverse the judgment of the court of appeals and render judgment that Davalos take nothing.