# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**F I L E D**
June 29, 2012

No. 11-20469

DOWNHOLE NAVIGATOR, L.L.C.,

Plaintiff–Appellant

v.

NAUTILUS INSURANCE COMPANY,

Defendant–Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Plaintiff–Appellant Downhole Navigator, L.L.C. ("Downhole") appeals from the magistrate judge's grant of partial summary judgment for Defendant–Appellee Nautilus Insurance Company ("Nautilus").[1] Nautilus (the insurer) had issued Downhole (the insured) a commercial general liability policy; after a third party, Sedona Oil and Gas Corporation ("Sedona"), sued Downhole, Downhole rejected the representation offered by Nautilus under the policy on the ground that Nautilus's reservation-of-rights letter had created a conflict of

---

[1] The parties consented to proceed before a magistrate judge for all proceedings, including entry of final judgment.

No. 11-20469

interest.  Downhole hired its own independent counsel; when Nautilus refused to reimburse Downhole for the cost of its independent counsel, Downhole filed this action, seeking a declaratory judgment that Nautilus had a contractual duty to defend and indemnify Downhole in the Sedona lawsuit.  The magistrate judge rejected Downhole's claim, ruling that Nautilus was not required to reimburse Downhole for the cost of independent counsel.  Downhole timely appealed that ruling.  For the reasons stated below, we AFFIRM.

## I.

Downhole services the oil drilling industry.  Sedona, an oil well operator, hired Downhole around November 2008 to help redirect an oil well toward a better location within a desired reservoir.  According to Sedona's complaint, Downhole developed the plan to conduct the deviation and participated directly in the deviation process, but around December 2008, Downhole negligently executed the deviation plan, causing damage to the well.  On March 3, 2009, Sedona brought a negligence action against Downhole in Texas state court.

Downhole had a one-year general commercial liability policy with Nautilus, running from mid-June 2008 to mid-June 2009.  Downhole submitted its notice of claim and indemnification to Nautilus on March 24, 2009.  Nautilus responded on March 30, 2009, and tendered a qualified defense under a reservation of rights.  Nautilus reserved its right to decline indemnity coverage if, after further investigation, the underlying suit fell under one of three policy exclusions: (1) the "expected or intended injury" exclusion, which excludes "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured"; (2) the "property damage" exclusion, which excludes certain "physical injury to tangible property"; (3) the "testing or consulting" exclusion, which excludes damages arising from "[a]n error, omission, defect, or deficiency in . . . any test performed or . . . [in] [a]n evaluation, a consultation or advice given, by or on behalf of any insured."  Additionally, though not referenced in the

2

No. 11-20469

letter, two other exclusions are relevant to this case: the "professional liability" exclusion, which excludes damages arising from "the rendering of or failure to render any professional services," including "the preparing, approving, or failing to prepare or approve . . . opinions, reports, surveys, . . . or drawings and specifications," and "supervisory, inspection, architectural or engineering activities"; the "data processing" exclusion, which excludes damages arising from "the rendering of, or failure to render, electronic data processing . . . services, advice or instruction . . . ."

On April 27, 2009, in response to the reservation-of-rights letter, Downhole notified Nautilus that it was rejecting Nautilus's proffered defense, writing: "Your decision to act under a reservation of rights has created a material conflict with respect to the selection of counsel. . . . Downhole has been left with no choice but to select its own representation. Pursuant to Texas law, Downhole expects and demands that you cover all damages related to this claim, including attorneys' fees, up to the applicable limits of [the policy]." On May 11, 2009, Nautilus responded that it had "reserved [its] rights while investigating the matter," and insisted that "[u]ntil or unless a coverage issue develops, Downhole is not entitled to separate counsel."

On March 3, 2010, Downhole filed this action, seeking a declaratory judgment that Nautilus has a contractual duty under the policy to defend Downhole, cover the cost of Downhole's independent counsel, and indemnify Downhole in the underlying Sedona suit. The parties filed cross-motions for summary judgment. The magistrate judge denied Downhole's motion for summary judgment, and granted in part and denied in part Nautilus's motion: the magistrate judge granted the portion of Nautilus's motion relating to its duty to defend, ruling that Nautilus was not required to reimburse Downhole for the cost of hiring independent counsel to defend Downhole in the Sedona suit; but

No. 11-20469

the magistrate judge denied the portion of the motion related to indemnity, ruling that it was premature to rule on the issue of indemnification.

## II.

The parties agree that Texas law governs this dispute. Because federal jurisdiction in this case is based on diversity, we follow Texas's substantive law. *See Preston Exploration Co., L.P. v. GSF, L.L.C.*, 669 F.3d 518, 522 (5th Cir. 2012) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78–79 (1938)). We review a district court's grant of summary judgment de novo, applying the same standards as the district court. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012). Summary judgment is appropriate where the movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(a)). In reviewing the record, all facts and inferences are construed in the light most favorable to the non-movant. *Id.* Nonetheless, "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Id.* (internal quotation marks omitted).

## III.

Under Texas law, it is well-settled that the insurer owes a duty to defend its insured against any allegation that is potentially covered by the policy. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). It is also well-settled that an insurer's "right to conduct the defense includes the authority to select the attorney who will defend the claim and to make other decisions that would normally be vested in the insured as the named party in the case." *N. Cnty. Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685, 688 (Tex. 2004). "Under certain circumstances, however, an insurer may not insist upon its contractual right to control the defense." *Id.* In *Davalos*, the Texas Supreme Court noted one such circumstance:

4

No. 11-20469

> In the typical coverage dispute, an insurer will issue a reservation of rights letter, which creates a potential conflict of interest. And when the facts to be adjudicated in the liability lawsuit are the same facts upon which coverage depends, the conflict of interest will prevent the insurer from conducting the defense.

*Id.* at 689 (citation omitted).[2]

Applying the principle from *Davalos* to this case, we agree with Nautilus and with the magistrate judge below that "the facts to be adjudicated" in the underlying Sedona litigation are not the same "facts upon which coverage depends." The underlying Sedona litigation concerns whether Downhole negligently performed its deviation work. If the insurance policy between Downhole and Nautilus excluded coverage for Downhole's negligent conduct, and Nautilus accordingly reserved its right to disclaim coverage based on whether Downhole had negligently performed its work, then the "facts to be adjudicated" in the Sedona litigation would be equivalent to the "facts upon which coverage depends." But no such equivalency exists, as Downhole's negligence is not a coverage issue between Downhole and Nautilus. Indeed, although the policy excludes coverage for "testing" or "consulting" services, the facts about whether Downhole breached a duty to Sedona by failing to act as a reasonably prudent provider of deviation-correction services are not equivalent to the facts that could determine whether Downhole was "testing" or "consulting" for Sedona. Unlike the former category of facts, the latter category of facts will not be adjudicated

---

[2] Although the Texas Supreme Court has not clarified the meaning of "facts to be adjudicated," the term "adjudicate" plainly means "to rule upon judicially." Black's Law Dictionary (9th ed. 2009); *see also Rx.com Inc. v. Hartford Fire Ins. Co.*, 426 F. Supp. 2d 546, 559 (S.D. Tex. 2006) (citing *Davalos* for the proposition that "[a] conflict of interest does not arise unless the outcome of the coverage issue can be controlled by counsel retained by the insurer for the defense of the underlying claim"); *Partrain v. Mid-Continent Speciality Ins. Servs., Inc.*, Civ. No. H-10-2580, 2012 WL 201864, at *15 (S.D. Tex. Jan. 20, 2012) (interpreting *Davalos* to stand for the proposition that "[i]n order for a disqualifying interest to exist . . . it must be apparent that facts upon which coverage depends will be ruled upon judicially in the Underlying Suit").

in the Sedona litigation; the underlying fact-finder will not decide whether Downhole's work constituted "testing" or "consulting." Likewise, while several other issues—whether Downhole provided "professional" or "data processing" services to Sedona, whether Downhole should have expected the damage to the well resulting from its work, or whether Downhole was occupying the property while providing its deviation-correction services—could be critical coverage issues, they are irrelevant to whether Downhole acted negligently.

According to Downhole, however, a more recent case from the Texas Supreme Court has changed the applicable standard. In *Unauthorized Practice of Law Committee v. American Home Assurance Company*, the Texas Supreme Court held that a liability insurer may use its staff attorneys to defend a claim against an insured without being deemed to have engaged in unauthorized practice of law, provided that the interests of the insured and the insurer are congruent. 261 S.W.3d 24, 39 (Tex. 2008). In the course of its reasoning, the court examined when and how those interests diverge; the court observed that "the most common conflict between an insurer and an insured" is whether a claim falls within the policy, and then stated:

> Other coverage issues may also depend on facts *developed* in the litigation. When an insurer is concerned that there may be a coverage issue, it usually issues a reservation-of-rights letter when it accepts the defense, agreeing to defend the insured without waiving its right to decline coverage later. . . . [W]e cannot say as a blanket rule that a staff attorney can never represent an insured under a routine reservation of rights.

*Id.* at 40 (emphasis added). Here on appeal, Downhole seizes on the word "developed" to argue that *Unauthorized Practice* relaxed the *Davalos* standard. Now, according to Downhole, a conflict of interest arises if facts that could be developed in the underlying litigation are the same facts upon which coverage depends. Based on this new standard, Downhole warns that if Nautilus were permitted to select Downhole's attorney, that attorney could steer the defense

to develop facts—by formulating questions and written responses during discovery—supporting the theory that Downhole was providing testing, consulting, professional, or data processing services. Likewise, the attorney could develop facts showing that Downhole should have expected the damage to the well resulting from its work, thereby bolstering the applicability of the "expected or intended injury" exclusion; or the attorney could develop facts showing that Downhole was occupying the property while providing its deviation services, thereby bolstering the applicability of the "property" exclusion.

Nonetheless, we decline to follow Downhole's strained reading of *Unauthorized Practice.* One inconsequential line of dicta—"[o]ther coverage issues may also depend on the facts developed in the litigation," *id.*—surely did not usher in a doctrinal change. Neither in *Unauthorized Practice* nor elsewhere has the Texas Supreme Court ever held that a conflict arises any time the attorney offered by the insurer could be tempted—in violation of his duty of loyalty to the insured—to develop facts in the underlying lawsuit that could be used to exclude coverage. The mere observation that coverage issues may turn on facts developed in the litigation does not necessarily entail that a conflict of interest will arise if the facts that could be developed in the underlying litigation are the same facts upon which coverage depends. Proceeding from the former observation to the latter conclusion requires an illogical leap.[3]

---

[3] Of course, the attorney hired by the insurer to represent the insured is duty-bound to defend the interests of the insured. *State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 628 (Tex. 1998) ("[B]ecause the lawyer owes unqualified loyalty to the insured, the lawyer must at all times protect the interests of the insured if those interests would be compromised by the insurer's instructions." (Citation omitted.)). Downhole's concern is thus somewhat overblown. Although the prospect that the attorney provided by Nautilus could develop facts harmful to Downhole's pursuit of coverage does not itself raise an actual conflict, if the attorney (at Nautilus's direction) improperly advanced Nautilus's interests at the expense of Downhole's interests, Nautilus would breach its duty to defend Downhole; such breach would free Downhole to reject the counsel provided by Nautilus and entitle Downhole to reimbursement for the cost of its own independent counsel. *See* 1 Allan D. Windt, Insurance Claims and Disputes § 4.25 (5th ed. 2007).

No. 11-20469

Downhole also argues that by focusing on the "facts to be adjudicated," rather than on the "facts to be developed," a conflict will arise in only one circumstance: where the policy exclusion is for intentional conduct and the third party is alleging intentional wrongdoing. An attorney sent by the insurer to defend the insured in such a case would be conflicted, for a finding of intent would disqualify coverage. But in no other case, according to Downhole, will the facts to be adjudicated be equivalent to the facts upon which coverage depends. Downhole thus suggests: "[T]he *Davalos* rule becomes meaningless because it would never apply to [a] conflict created by any policy exclusion except an exclusion for intentional conduct, which may, in special cases, be the only situation in which an underlying fact-finder specifically answers questions that would also dispose of a coverage issue." Yet, Downhole's assumption is incorrect. The facts to be adjudicated may be the same facts upon which coverage depends in other situations, such as where the insurer reserves the right to deny coverage based upon a breach of contract exclusion and the underlying litigation raises a claim for breach of contract, or where the insurer reserves the right to deny coverage for damages taking place outside the contract period and the underlying action involves the issue of when damages took place. The *Davalos* standard, as applied here, is not so "meaningless."

Because the facts to be adjudicated in the Sedona lawsuit are not the same facts upon which coverage depends, the potential conflict in this case does not disqualify the attorney offered by Nautilus to represent Downhole. We agree with the magistrate judge's ruling and hold that Downhole is not entitled to reimbursement from Nautilus for the cost of hiring independent counsel.

AFFIRMED.