# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 4, 2013

No. 12-40421

Lyle W. Cayce
Clerk

CHRISTOPHER D. WRIGHT,

Plaintiff - Appellant

v.

JUDSON T. WEAVER; JOE K. WEAVER; CATHEY T. WEAVER,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:07-CV-369

Before JONES, DENNIS, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Sometime after 12:15 a.m. on March 7, 2007, Judson Weaver ("Judson") and Chris Wright ("Wright") got into a fight in the parking lot of the Bright Star Lounge in Sulphur Springs, Texas. The fight took place while Judson was sitting in the driver's seat of a 2002 G.M.C. Yukon ("the Yukon"), and he remained in the car during the altercation. According to the allegations, Judson spit on Wright and used a racial epithet, in response to which Wright lunged at Judson through the open, driver's-side window of the Yukon. This led to Judson

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40421

accelerating the vehicle through the bar's parking lot until it hit a curb, halting the vehicle and sending Wright flying into the pavement, causing him injuries.

Wright brought suit in federal district court against Judson and his parents, Joe K. Weaver ("Joe") and Cathey T. Weaver ("Cathey") (collectively, "the Weavers").[1]  Wright asserted a negligence claim against Judson and a negligent-entrustment claim against the Weavers.  (At the time of the incident, Judson was twenty-four years old and therefore not a minor.)  Despite initially denying the Weavers' motion for summary judgment, the district court subsequently changed course, granting the Weavers' motion because there was insufficient evidence to conclude that Judson was a reckless driver, a necessary element for a claim of negligent entrustment under Texas law.  And although Wright requested that any negligence finding by the jury against Judson bind the Weavers, the district court denied his request.  Wright's negligence claim against Judson went to trial, and a jury determined that Judson was negligent on the night of the incident and that Judson's negligence proximately caused Wright's injuries.  We do not disturb the jury's verdict against Judson.

Wright now appeals the district court's grant of summary judgment in favor of the Weavers on the negligent-entrustment claim.  In the event that the panel reverses the district court's judgment, he also asks that the Weavers be collaterally estopped from challenging the jury's determination that Judson was negligent and that his negligence proximately caused Wright's injuries, two necessary elements for a claim of negligent entrustment under Texas law.

On review of the record, we conclude that there is no genuine issue of material fact that Judson's driving record is insufficient to demonstrate that he

---

[1] The district court exercised jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between Wright, on the one hand, and Judson, Joe, and Cathey, on the other.  Further, Wright sued the Weavers for an amount in excess of $75,000 exclusive of interest and costs.

was a reckless driver.  Wright argues in the alternative that, based on the application of *Revisore v. West*, 450 S.W.2d 361, 364 (Tex. App. 1970), he may succeed on his claim against the Weavers even assuming Judson has a driving record insufficient to prove recklessness.  Under Texas law, a plaintiff is not limited to the prior driving record of the entrustee; rather, evidence of the condition, state, or situation of the driver at the time of the entrustment may also be considered in determining negligent entrustment.  *See id.*  Nonetheless, there is insufficient evidence that, even assuming the Weavers spoke to their son on the night of the incident, either of them knew that he was so intoxicated that he would be a danger to others.  Accordingly, we AFFIRM the district court's grant of summary judgment in favor of the Weavers.

## BACKGROUND

On March 6, 2007, Judson and a group of friends, following dinner at a local Chili's restaurant, went to the Bright Star Lounge to celebrate a successful day of business at the dealership where Judson worked.  One of the people who went to the Bright Star Lounge with Judson was Ashley Stubblefield ("Stubblefield"), a friend of Judson's.  Also at the bar were Wright and his girlfriend, Sarah Ashley ("Ashley"), who was a bartender at the Bright Star Lounge (but who was not working that night) and with whom Judson was acquainted.  Rebecca Nelson ("Nelson") was bartending that night.  The parties disagree regarding how much Judson had to drink overall that evening and how much he had to drink at the Bright Star.

Sometime between 11:00 p.m. and 11:30 p.m., Judson reportedly approached Ashley and made a racially charged comment about Ashley dating Wright, who is black.  Subsequently, there was a confrontation between Wright and Judson in the parking lot of the bar.  At roughly 12:15 a.m., Judson and his friends were asked to leave the premises, and Judson evidently got into the Yukon and drove away.  Wright remained at the Bright Star Lounge while the

No. 12-40421

bartenders closed the bar.  However, as Wright and Ashley were leaving the bar, Judson and his friends returned, and a fight ensued between Judson and Wright in the bar's parking lot.

Judson remained in the Yukon during the altercation, but after Judson made a racial epithet and spit on Wright, Wright approached the window, and punches were thrown.  Wright, according to Judson, lunged into the open, driver's-side window of the car, grabbed Judson, and knocked off Judson's glasses.  Judson then accelerated through the parking lot with Wright hanging out of the window.  When Judson hit a curb, Wright was thrown from the window and injured.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, applying the same standards as did the district court.  *Downhole Navigator, L.L.C. v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012).  "Summary judgment is appropriate where the movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."  *Id.*  "In reviewing the record, all facts and inferences are construed in the light most favorable to the non-movant."  *Id.*  However, "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial."  *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012) (internal quotation marks omitted).

When the non-moving party—in this case, Wright—bears the burden of proof on a claim on which summary judgment is sought, the movant—in this case, the Weavers—may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once a movant who does not have the burden of proof at trial makes a properly supported motion, the burden shifts to the nonmovant to show that a summary judgment should not be granted."  *Ragas*

No. 12-40421

*v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).   However, "conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).   Rather, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

## DISCUSSION

### A.

### 1.

"The parties agree that Texas law governs this dispute.  Because federal jurisdiction in this case is based on diversity, we follow Texas's substantive law." *Downhole Navigator*, 686 F.3d at 328.  The parties agree on the elements of negligent entrustment under Texas law.  To make out a negligent-entrustment claim, a plaintiff generally must show each of the following: "(1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed, [incompetent, or reckless,] (4) that the driver was negligent on the occasion in question and (5) that the driver's negligence proximately caused the accident." *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987).  Thus, generally speaking, if there is no genuine issue of material fact with respect to any of these five elements, Wright's claim fails.

### 2.

The parties focus their attention on whether Judson's driving record reveals that he was a reckless driver.  The definition of "recklessness" under Texas law depends on context:

> [D]rivers have been determined to be reckless when their history of driving habits, traffic violations, or intemperance (whether due to

wilful and wanton actions or otherwise) exhibits a pattern of such deviations from lawful and proper manner of vehicle operation that if the entrustor had knowledge of the history, the entrustor should reasonably have anticipated that the driver would operate the entrusted vehicle in a wrongful manner and thereby damage persons or property.

*Pesina v. Hudson*, 132 S.W.3d 133, 137-38 (Tex. App. 2004).  That said, although an individual's driving record and accident history are relevant to show recklessness, evidence of isolated or remote incidents is insufficient.  *See Aboushadid v. Ward*, No. 07-05-0140-CV, 2007 WL 397117, at *4 (Tex. App. Feb. 5, 2007) ("Courts have uniformly held individual or isolated driving violations are not evidence of recklessness or incompetence."); *Avalos v. Brown Auto. Ctr., Inc.*, 63 S.W.3d 42, 49 (Tex. App. 2001) (holding that a seven-year-old driving-while-intoxicated ("DWI") conviction was too remote to create a fact issue regarding the driver's recklessness); *see also Beall v. Cooke*, No. 01-00-00150-CV, 2001 WL 699915, at *4 (Tex. App. June 21, 2001) (same with respect to a five-year-old DWI conviction).

The parties vigorously dispute which events from Judson's past are relevant for the purpose of evaluating whether he was a reckless driver. Nevertheless, because the events on which Wright focuses are either too remote in time or are not driving-related, we conclude that there is no genuine issue of material fact that Judson's driving record is insufficient to demonstrate that he was a reckless driver.  *See Pesina*, 132 S.W.3d at 137-38; *Avalos*, 63 S.W.3d at 49.

First, Wright introduced evidence that in June 2000, Judson, who was eighteen at the time, drove his parents' truck, crashed it into a ditch, and was arrested for public intoxication.  This event, which took place seven years prior to the incident giving rise to this suit, is too remote in time to be relevant to show recklessness.  *See Avalos*, 63 S.W.3d at 49.

Second, Wright presented evidence that in April 2001, Judson was arrested for public intoxication and criminal mischief after he was found having pulled the fire alarm and damaged vehicles on the fourth floor of the parking garage at the Omni Hotel in Austin, Texas.  Although Wright reasons that it is a "fair inference" that Judson would have driven but for the public-intoxication arrest, this is mere conjecture.  *See RSR Corp.*, 612 F.3d at 857 ("[S]speculation[] . . . cannot defeat a motion for summary judgment.").  Even if we were to assume that this event is not too remote in time, *but see Avalos*, 63 S.W.3d at 49, we conclude that it is not driving-related and therefore irrelevant to show recklessness in driving, *see Pesina*, 132 S.W.3d at 137-38.

Third, Wright introduced evidence that in April 2002, a police officer arrested Judson for possession of marijuana and prescription medication without a prescription.  Despite Wright's arguments to the contrary, there is no support in the record for either the proposition that Judson was driving at the time of the arrest or even the proposition that he was under the influence when this occurred.  Therefore, the arrest does not relate to driving and is therefore not relevant to our determination.  *See Pesina*, 132 S.W.3d at 137-38.

Fourth, Wright presented evidence that Judson was stopped in February or March of 2005 for a defective headlamp.  However, because no fault was indicated in the stop and because a stop for a defective headlamp does not represent the kind of "deviation[] from lawful and proper manner of vehicle operation" as required to show reckless driving under Texas law, this event is also irrelevant to our determination.  *Pesina*, 132 S.W.3d at 137; *see Hines v. Nelson*, 547 S.W.2d 378, 386 (Tex. App. 1977) ("[A] driving record containing listed violations or accidents in which no indication of guilt or fault is indicated is insufficient to show that the individual concerned was a habitually reckless and incompetent driver.").

No. 12-40421

Fifth, Wright introduced evidence that in June 2005, Judson read-ended another vehicle while driving his father's Jeep. However, no citation was issued and no fault was determined, rendering this event insufficient to demonstrate that Judson was a reckless driver. *See Monroe v. Grider*, 884 S.W.2d 811, 815 (Tex. App. 1994) ("Involvement in a previous collision alone does not create an inference or conclusion that a driver is incompetent or reckless."); *Hines*, 547 S.W.2d at 386.

Lastly, Wright presented evidence that in July 2005, a police officer arrested Judson, whose license had been suspended the previous month, for a defective taillight while driving his father's Jeep. The arresting officer was responding to a "disturbance," and, because Judson was arrested and the car impounded, Wright suggests that the incident involved more than a mere defective headlight. Wright's insinuations, however, are mere conjecture not supported by the record. *See RSR Corp.*, 612 F.3d at 857. As such, a defective headlight is insufficient to show that Judson was a reckless driver under Texas law.

In sum, neither the April 2001 nor the April 2002 arrests were driving-related. The June 2000 public-intoxication arrest is too remote in time under Texas law, and the 2005 defective-headlamp stop, the June 2005 rear-end collision, and the July 2005 defective-taillight arrest included no fault determinations and otherwise involved minor traffic violations. Accordingly, we conclude that there is no genuine issue of material fact regarding whether Judson was a habitually reckless driver under Texas law, a necessary element of Wright's negligent-entrustment claim.

3.

To make out a negligent entrustment claim, the "defendant entrustor should be shown to be reasonably able to anticipate that an injury would result as a natural and probable consequence of the entrustment." *Schneider*, 744

S.W.2d at 596. Generally, if the entrustee has no history of reckless driving, the entrustor is not "reasonably able to anticipate that an injury would result." *Id.* That said, Texas law provides that a plaintiff may succeed on a negligent-entrustment claim even though the driver has an insufficient record of recklessness. This is because a plaintiff is not limited to the prior driving record of the entrustee; rather, evidence of the condition, state, or situation of the driver at the time of the entrustment may also be considered in determining negligent entrustment. *See Louis Thames Chevrolet Co. v. Hathaway*, 712 S.W.2d 602, 604 (Tex. App. 1986); *Revisore*, 450 S.W.2d at 364.

In *Revisore*, the plaintiff was involved in an auto accident with another driver, Eagerton, who was driving a car loaned to him by the defendant. 450 S.W.2d at 362. The plaintiff sued the defendant for negligent entrustment. *Id.* The plaintiff conceded that Eagerton's record was insufficient to demonstrate that he was a reckless driver. *Id.* Rather, the plaintiff's theory of the case asserted that "there was negligence in the entrustment of the . . . car by [the defendant] because of the physical and mental condition of Eagerton at the time in question." *Id.* at 263. The *Revisore* court agreed, stating that, in determining whether Eagerton was reckless, it could consider "the condition, state, or situation of an entrustee at the time he is loaned an automobile." *Id.* at 364. Thus:

> An entrustment may be deemed negligent where an entrustee is physically or mentally incapacitated, intoxicated or for any reason lacking in judgment or perception. In such instances knowledge of the entrustor of the incompetency or recklessness of the driver is apparent. Such factors may evidence negligence on the part of the entrustor who, oblivious to them or their potential impact, entrusts an automobile under the circumstances here prevailing.

*Id.*

From *Revisore*, Wright reasons that because both parents spoke to Judson on the phone on March 6, 2007, they should have known that he was intoxicated

and therefore unfit to drive. We disagree. First, with respect to Judson's father, Joe, the record reflects that Judson and Joe spoke while Joe was on his way to Chili's. However, *Revisore* requires that, at the time of the entrustment, Judson be evidently intoxicated such that Joe's knowledge that Judson would drive recklessly would be apparent. Yet there is no record evidence that Judson had been drinking, let alone was intoxicated, prior to his arrival at the Chili's, a point which Wright implicitly concedes. Therefore, his *Revisore* claim with respect to Joe cannot succeed.

With respect to Cathey, the record suggests that she and Judson spoke while Judson was at the Bright Star Lounge.[2] According to Stubblefield, who sat next to Judson at the bar, Judson spoke to his mother. Specifically, she recalled that Judson and his mother spoke on the phone because Judson reported that his mother remembered teaching Stubblefield in school. However, Stubblefield could not recall at what time Judson spoke to his mother. Moreover, although Ashley, Nelson, and Stubblefield reported that Judson was intoxicated at the Bright Star Lounge, they did not state *when* they observed that Judson was drunk. Even assuming that Judson was intoxicated at the bar, Stubblefield did not—and likely could not—testify that Cathey knew that Judson was unfit to drive. This means that there is insufficient summary-judgment evidence that Cathey knew her son's operation of a motor vehicle would be dangerous. Accordingly, we conclude that Wright's theory of the case under *Revisore* cannot survive summary judgment and judgment in favor of the Weavers was properly granted.

## B.

Wright also argues that the district court erroneously denied his request to bind the Weavers to any negligence finding by the jury against Judson.

---

[2] Both Cathey and Judson, however, deny that they spoke on the night of the incident.

However, the parties agree that the panel need only address this issue if the panel reverses the grant of summary judgment in favor of the Weavers. Because we affirm the judgment of the district court, we decline to address this issue.

## CONCLUSION

For these reasons, we AFFIRM the judgment of the district court.