# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20099

United States Court of Appeals
Fifth Circuit

**FILED**

June 24, 2014

Lyle W. Cayce
Clerk

WILLIAM GRAPER,

Plaintiff – Appellant

v.

MID-CONTINENT CASUALTY COMPANY,

Defendant – Appellee

v.

BEN B. FLOYD, Chapter 7 Bankruptcy Trustee for Joe B. Partain and Laura Partain,

Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and JOLLY and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

William Graper and Ben B. Floyd[1] (the "Insureds") appeal the district court's grant of summary judgment in favor of Mid-Continent Casualty Company ("Mid-Continent). The Insureds filed suit against Mid-Continent alleging that it failed in its obligation to defend them when it refused to pay the fees of the Insureds' chosen attorney who represented them in an

---

[1] Floyd is acting as Bankruptcy Trustee for Joe and Laura Partain.

No. 13-20099

underlying lawsuit brought against them by Kipp Flores Architects ("KFA"). Mid-Continent argues that it fulfilled its duty to defend the Insureds by tendering its selected counsel to defend the suit. The Insureds argue that a disqualifying conflict of interest arose between them and Mid-Continent, entitling them to their choice of counsel at Mid-Continent's expense. Because we hold that no disqualifying conflict of interest existed under Texas law, and Mid-Continent fulfilled its duty to defend the Insureds by tendering its chosen attorney, the district court did not err. We thus AFFIRM its final judgment granting Mid-Continent's motion for summary judgment.

I.

Mid-Continent issued successive general liability policies to Hallmark Design Homes, LP, a builder of production homes located in Texas, and Hallmark Collection of Homes LLC, its general partner (collectively "Hallmark"), covering a time period between May 2004 and January 2009.[2] In March 2009, KFA filed a lawsuit against Hallmark and Joe Partain, as a principal of the company, alleging that Hallmark had violated several of its copyright rights in several architectural designs. The other individuals, Laura Partain and William Graper, also principals of Hallmark, were added to the suit at a later time. KFA maintained that the named individuals were vicariously liable for the actions of Hallmark.

KFA's complaint alleged that Hallmark used KFA's copyrighted designs when constructing homes and used those same designs in promotional materials. It further alleged that once KFA discovered Hallmark's infringing conduct, it sent a cease and desist letter to Hallmark; notwithstanding this letter, Hallmark's infringing conduct continued. KFA pled for actual damages, and, in the alternative, statutory damages under the Copyright Act of 1976.

---

[2] The successive policies, for all intents and purposes, were essentially the same.

No. 13-20099

Following KFA's filing of its complaint, the Insureds tendered the claim to Mid-Continent. After a preliminary investigation, Mid-Continent agreed to defend the Insureds subject to a reservation of rights. In the reservation of rights, Mid-Continent listed several provisions in the Insureds' insurance policy that could preclude coverage of KFA's claim against Hallmark. Two of the potential bases for exclusion included: (1) that the injury may not have occurred during policy coverage dates and (2) that the infringing conduct may have been intentional or willful.

After receiving this reservation of rights, the Insureds notified Mid-Continent that they would select their own counsel because they believed there was a disqualifying conflict of interest between them and any counsel Mid-Continent chose. Mid-Continent offered its own counsel to defend the Insureds but refused to fund their defense if they insisted on hiring their own counsel.

The Insureds refused Mid-Continent's tender and elected to continue defending the KFA suit with their own counsel. They later filed a declaratory action in Texas state court seeking a determination of their rights and powers under the successive insurance policies. Mid-Continent removed the case to the Southern District of Texas, and the Insureds amended their complaint to allege a breach of contract claim, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act. Mid-Continent filed both a motion to dismiss and a motion for summary judgment on all claims; the district court granted both, dismissing several of the Insureds' claims against Mid-Continent and granting Mid-Continent summary judgment on the rest. The district court held that no disqualifying conflict of interest existed between the Insureds and Mid-Continent, and that Mid-Continent had fulfilled its duty to defend when it tendered its chosen counsel to represent the Insureds. The district court entered a final judgment against the Insureds and the Insureds timely appealed.

No. 13-20099

We observe as an aside, that this court recently upheld an award of 3.2 million dollars in favor of KFA in its underlying suit against the Insureds. *See Kipp Flores Architects, L.L.C. v. Hallmark Design Homes, L.P.*, 544 F. App'x 553 (5th Cir. 2013). The litigation over whether this award is covered by the Mid-Continent policies is pending in the Western District of Texas. The only issue in this appeal is whether Mid-Continent was obligated to pay for the Insureds' selected counsel to defend the KFA claims.

## II.

## A.

We now turn our attention to that issue and begin by addressing the law governing this appeal. A federal district court "appl[ies] state substantive law in diversity jurisdiction cases." *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003). That law must be applied "as interpreted by the state's highest court." *Barfield v. Madison Cnty.*, 212 F.3d 269, 271-72 (5th Cir. 2000). If the state's highest court has not ruled definitively on an issue, "it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Id.* at 272 (internal quotation marks and citation omitted). We apply Texas law in this diversity case.

The issues in this appeal were decided on summary judgment, and this court reviews grants of summary judgment de novo. *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). "Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing FED. R. CIV. P. 56(a)).

## B.

When an insured is sued and the "petition contains allegations which, when fairly and reasonably construed, state a cause of action that is potentially covered by the policy, then the insurer has a duty to defend the insured in the

underlying lawsuit." *Burlington Ins. Co. v. Texas Krishnas, Inc.*, 143 S.W.3d 226, 229 (Tex. App.–Eastland 2004). Because the duty to defend is based solely upon allegations in the pleadings, it "is broader than the duty to indemnify" and, in certain cases, an insurer may have had a duty to defend even when it is later found that coverage (the duty to indemnify) does not exist. *Id.* Ordinarily, however, if the duty to defend arises, liability insurance policies grant the insurer "complete, exclusive control of the defense." *Unauthorized Practice of Law Comm. v. Am. Home Assur. Co.*, 261 S.W.3d 24, 26 (Tex. 2008). This authority includes the right to select counsel to defend the lawsuit. Although an insurer may have an obligation to defend, oftentimes actual coverage of the claim "cannot be determined when a claim is first filed." *Id.* at 40.

Thus, when an insurer acknowledges that it has the duty to defend the insured, but still questions whether it must indemnify, "it [will] usually issue[] a reservation of rights letter when it accepts the defense, agreeing to defend the insured without waiving its right to decline coverage later." *Id.* Therein reside the seeds of a conflict of interest. Even though the insurer's chosen counsel owes a duty of unqualified loyalty to its insured, that duty can be threatened where the insured's interests contrast sharply with those of the insurer. *State Farm Mut. Auto Ins. Co. v. Traver*, 980 S.W.2d 625, 628 (Tex. 1998). If a conflict of interest actually exists it may be disqualifiable, giving the insured the "privilege of rejecti[ng] th[is] limited representation and hiring a lawyer of [its] own choosing and looking to [the insurer] for the payment of the attorney's fees." *Britt v. Cambridge Mut. Fire Ins. Co.*, 717 S.W.2d 476, 481 (Tex. App.–San Antonio 1986).

## C.

So, we take the next step to resolving this appeal by asking when will a conflict of interest entitle an insured to select its own counsel. Texas law is

controlling, and the principal case on such conflicts of interest as are raised in this appeal is *N. Cnty. Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685 (Tex. 2004). *Davalos* recognizes that an insurer's issuance of a reservation of rights can "create[] a potential conflict of interest." *Id.* The reservation of rights, however, "does not, by itself, create a conflict between the insured and insurer; it only recognizes the possibility that such a conflict may arise in the future." *Am. Home Assur. Co., Inc.*, 261 S.W.3d at 40. Instead, the test to apply is whether "the facts to be adjudicated in the [underlying] lawsuit are the same facts upon which coverage depends."[3] *Davalos*, 140 S.W.3d at 689.

The Insureds argue that this conflict of interest rule is not a strict rule, but that it is flexible to permit a disqualifying conflict of interest to arise when insurer-hired attorneys may be tempted to develop facts or legal strategy that ultimately could support the insurer's coverage position. We expressly rejected this argument in *Downhole Navigator, L.L.C. v. Nautilus Ins. Co.*, in which we held that the "same facts" test in *Davalos* was the proper analysis to determine whether a disqualifying conflict of interest exists. 686 F.3d 325, 328-29 (5th Cir. 2012). Therefore, we conclude that the "same facts" standard controls our analysis. Applying that standard, we will decide whether the district court erred in holding that no facts deciding coverage issues would be adjudicated in the trial of the underlying KFA suit.

### III.

### A.

We begin by setting the stage: Mid-Continent, the insurer, has reserved the right to deny coverage of the underlying copyright infringement claims on

---

[3] We have addressed the meaning of the words "to be adjudicated" before in *Downhole Navigator, L.L.C. v. Nautilus Ins. Co.*, 686 F.3d 325, 330 n. 2 (5th Cir. 2012). There we said that while "the Texas Supreme Court has not clarified the meaning of 'facts to be adjudicated,' the term 'adjudicate' plainly means 'to rule upon judicially.'" *Id.* (quoting BLACK'S LAW DICTIONARY (9th ed. 2009)).

grounds that the alleged acts of infringement against the Insureds "occurred" outside the time the policy was in effect; the Insureds are defending KFA's copyright claims on grounds that the claims "accrued" outside the applicable time provided by the statute of limitations. The Insureds argue that the timing related to coverage of the claims and timing relating to accrual of the claims run on the same factual track, which creates a disqualifiable conflict because adjudication of many of the same facts will determine both the Insureds' liability and the Insureds' coverage.[4] Closer scrutiny of the Insureds' argument shows that it misconceives which facts are necessary to adjudicate the Insureds' defense that the statute of limitations bars KFA's claims.

As we have noted more than once, KFA brought these claims in the underlying case against the Insureds under the Copyright Act. In litigating the Insureds' statute of limitation defense Mid-Continent's chosen counsel, as far as we can tell from the briefs and the record, would only need to have adjudicated the fact of when the claim *accrued*, not the fact of when the acts of infringement *occurred*. *Makedwde Pub. Co. v. Johnson*, 37 F.3d 180, 181 (5th Cir. 1994). A claim accrues once the plaintiff "kn[ows] or ha[s] reason to know of the injury upon which the claim is based."[5] *Jordan v. Sony BMG Music Entm't Inc.*, 354 F. App'x 942, 945 (5th Cir. 2009) (quoting *Pritchett v. Pound*, 473 F.3d 217, 220 (5th Cir. 2006)) (internal quotation marks omitted).

*Davalos* explicitly rejects the notion that an insured is entitled to select its own counsel merely because the *potential* for a conflict of interest exists.

---

[4] The relevant exclusion, exclusion 2(c), bars coverage for "personal and advertising injury" arising out of oral or written publication of material that took place before the beginning of the [first] policy period."

[5] Other circuits agree that this is the proper inquiry. *See Cooper v. NCS Pearson, Inc.*, 733 F.3d 1013 (10th Cir. 2013) (holding that a copyright claim accrues when a plaintiff has actual or constructive knowledge of infringement); *William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009) (noting that eight of its sister circuits "have applied the discovery rule to civil actions under the Copyright Act").

Here, as between occurrence and accrual, we have two different concepts; an occurrence determines the date of the actual injury and accrual determines the date of the discovery of the injury.  The only common fact between the timing of these two determinations is that the occurrence inevitably occurred before the discovery.  While the adjudication of the date when KFA discovered the injury would signal, in subsequent litigation, that the infringing conduct occurred *before* that date of discovery, such a determination would only be a general finding, and would lack the specificity necessary to decide whether the claim was covered under the Insureds' policy.  An adjudication of the accrual date (the fact to be adjudicated in the underlying lawsuit) need not be a judicial ruling necessarily deciding the date of when the infringing conduct occured (the fact upon which coverage depends).  Thus, under the *Davalos* same facts test, there is no disqualifiable conflict of interest between the Insureds and Mid-Continent in litigating the statute of limitations defense.

### B.

There is a second "same" fact that the Insureds argue creates a disqualifying conflict of interest; that is the willfulness of the Insureds' conduct.  The question of willfulness arises under the policy exclusion for knowing conduct that violates the rights of another.  In this respect, KFA alternatively pled for statutory damages under 17 U.S.C. § 504(c).  Section 504(c) allows a copyright owner to receive an award of "not less than $750 or more than $30,000" for each incident of infringement.  *Id.* at § 504(c)(1).  This award is in lieu of "actual damages and profits" and is receivable at the copyright owner's election.  *Id.*  Statutory damages under this section may be upwardly adjusted if the "infringement was committed *willfully*."  *Id.* at § 504(c)(2) (emphasis added).  According to the Insureds, if KFA elected to receive statutory damages, those damages would be enhanced by a finding of willfulness.  The Insureds argue that because willfulness necessarily

*encompasses* knowing conduct, the underlying court would, in deciding willfulness, necessarily adjudicate whether Hallmark's infringement was knowing and thereby determine an issue of coverage under the policy.

It is significant, however, that the exclusionary provision in Mid-Continent's policy extends only to *knowing* violations of the rights of another.[6] A finding of willfulness in the underlying suit would not adjudicate the fact of whether the infringement was knowing because a finding of willfulness under the Copyright Act does not require proof of knowing conduct. In short, a finding of willful conduct under § 504(c)(2) would not be equivalent to a finding of knowing conduct necessary to settle the issue of whether exclusion 2(a) applies to exclude coverage.

We have had limited opportunities to interpret the meaning of a willful violation under 17 U.S.C. § 504(c)(2). In an unpublished decision, we interpreted "willful" under the Copyright Act to cover situations where "the defendant has *recklessly disregarded* the plaintiff's rights, or upon a showing that the defendant knew or should have known it infringed upon a copyrighted work." *Lance v. Freddie Records, Inc.*, No. 92-7561, 1993 WL 58790, at *2 (5th Cir. 1993) (emphasis added); *see also Phillip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685, 693 (W.D. Tex. 2008) (noting that "courts within the Fifth Circuit[] have found willful conduct where a defendant acts with 'reckless disregard'"), *and Berg v. Symons*, 393 F. Supp. 2d 525, 540 (S.D. Tex. 2005) (holding that willful violations under § 504(c)(2) include a "defendant's actions [that] were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights").

---

[6] The specific exclusion in the policy, exclusion 2(a), acts to eliminate coverage for "'personal and advertising injury' caused by or at the direction of the insured *with the knowledge that the act would violate the rights of another* and would inflict 'personal and advertising injury.'"

No. 13-20099

Although the Supreme Court has not directly addressed the definition of "willful" under the Copyright Act, "the general rule [is] that a common law term in a statute comes with a common law meaning, absent anything pointing another way." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 58 (2007) (internal citation omitted). Because the common law construction of the term "willful" covers behavior that is "wanton" or "reckless[,]" the "standard civil usage" should as well. *Id.* Thus, when "willfulness is a statutory condition of civil liability, [it] cover[s] not only *knowing* violations of a standard, but reckless ones as well." *Id. Safeco* mandates that we interpret "willful" under § 504(c)(2) as encompassing more than just "knowing" infringements.[7]

In sum, we hold that an application of the *Davalos* "same facts" standard evidences no conflict here. The underlying trial court's determination that there was a willful violation of KFA's copyright under § 504(c)(2) would not settle the issue of whether that violation was knowing; a violation can amount to reckless conduct and still be willful under the statute. Because the infringement could be willful conduct under § 504(c)(2), entitling KFA to enhanced damages, without a finding of knowing infringement thereby excluding coverage, there is no disqualifying conflict of interest under *Davalos*.[8]

---

[7] We recognize that this position is consistent with the one taken by our sister circuits. *See N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (holding that a finding of "reckless disregard of the copyright holder's rights (rather than actual knowledge of infringement) suffices to warrant [an] award of enhanced damages"); *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1020–21 (7th Cir. 1991) (holding that the term "willful" encompasses the "reckless disregard of the copyright owner's right"); *RCA/Ariola Intern., Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 779 (8th Cir. 1988) (holding that "willfully" under the Copyright Act encompasses reckless disregard).

[8] The Insureds' two remaining issues on appeal are decided based on our finding that there was no disqualifying conflict of interest. Mid-Continent possessed the right to select counsel, and it did not breach the insurance contract by insisting upon exercising that right. Furthermore, the Insureds' claim for fees paid to their selected counsel was *not* a *valid claim*, and the district court did not err in granting summary judgment on this issue in favor of Mid-

No. 13-20099

## VI.

The district court did not err in finding that there were no facts capable of being adjudicated in the underlying KFA litigation that would decide issues of coverage between the Insureds and Mid-Continent.  A finding that there was no disqualifying conflict of interest entitled Mid-Continent to summary judgment on both the Insureds' breach of contract claim and its claim under the Texas Insurance Code.  Accordingly, the district court's final judgment granting Mid-Continent's motion for summary judgment is

AFFIRMED.[9]

---

Continent.  *See* TEX. INS. CODE ANN. § 542.058(b) (there is no violation of the prompt payment statute where "it is found as a result of arbitration or litigation that a claim received by an insurer is invalid and should not be paid by the insurer").

[9] The motion to certify questions to the Texas Supreme Court is denied.