In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-22-00252-CV
_____

## MID-CONTINENT CASUALTY COMPANY, Appellant

## V.

## HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 400, Appellee

_____

**On Appeal from the 457th District Court**
**Montgomery County, Texas**
**Trial Cause No. 19-10-13793-CV**

_____

## MEMORANDUM OPINION

In this interlocutory permissive appeal,[1] we are asked whether

Mid-Continent Casualty Company (Mid-Continent), Appellant, must

_____

[1] The trial court granted Mid-Continent permission to appeal from the trial court's interlocutory ruling denying Mid-Continent's No-Evidence and Traditional Motion for Summary Judgment, and this Court accepted the appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (authorizing a permissive appeal from an "order that is not otherwise

reimburse its insureds, Harris County Municipal Utility District No. 400 (MUD 400), Anne Marie Wright (Wright), and Cheryl Smith (Smith), Appellees or Insureds, for fees and expenses incurred by attorneys chosen by the MUD 400 to defend the Insureds in an election contest lawsuit and whether the insurer had a duty to reimburse its insureds for costs that they incurred in hiring separate counsel to defend each insured in the underlying lawsuit.

The Insureds sued Mid-Continent for failing to pay their attorneys' fees in defense of the underlying lawsuit. In their second amended petition – the live pleading before us – the Insureds allege several causes of action against Mid-Continent, including breach of contract, bad faith, and several Insurance Code violations. Mid-Continent submitted a hybrid traditional, and no-evidence motion for summary judgment on the claims. The trial court denied the motion for summary judgment,

_____

appealable" in a case that identifies a controlling question of law on which there is substantial ground for disagreement and where an immediate appeal may materially advance the ultimate resolution of the lawsuit); Tex. R. Civ. P. 168 (requiring trial court to grant permissive appeal by order that identifies controlling questions of law on which there is a substantial ground for difference of opinion and stating why immediate appeal may advance ultimate disposition of litigation); Tex. R. App. P. 28.3 (addressing permissive appeals in civil cases).

concluding Mid-Continent had a duty to reimburse its insureds for costs, fees and expenses incurred by attorneys chosen by the insureds to defend the insureds in the underlying lawsuit. For the reasons set forth below, we reverse and remand.

## Background

### *The Underlying Suit*

This dispute arises from an underlying lawsuit filed by Edgar Clayton (Clayton) in June 2018 (the "Clayton Suit"). In the Clayton Suit, Clayton challenged the result of the May 5, 2018 election of two open at-large director positions on the MUD 400 board of directors. Clayton, who placed third in the election, sued MUD 400, Wright, and Smith. In the petition, he alleged violations of the Texas Election Code, specifically that (1) illegal votes were counted because voters were not prevented from voting more than once, and individuals who were not entitled to vote cast votes that were counted; (2) voters who were eligible to vote were turned away from the polls due to failures with availability of the temporary voting trailer; and (3) election officials were engaged in fraud, illegal conduct, or made mistakes regarding the ballots by mail that resulted in ballots by mail not being counted, verified, or authenticated. Clayton

3

asked the trial court to declare it impossible to look at the records from the election and establish that any of the votes were cast by qualified voters, that every vote cast be deemed an illegal vote, and that all votes shall be subtracted from every total making the election void. Clayton also asked the trial court to declare the election void and order a new election, assessing all costs against MUD 400.

*Mid-Continent's Insurance Policy Terms and Reservation of Rights*

Mid-Continent issued a Directors and Officers Policy 04-DO-000158763, with effective dates of March 31, 2018, through March 31, 2019, insuring MUD 400, and its directors. Several forms and endorsements are attached to the policy. The coverage endorsements include a Non-Profit Organization Liability Policy form ML1395, (01/97). On July 2, 2018, attorney James Stilwell, acting on behalf of MUD 400, Wright, and Smith, notified Mid-Continent of the Clayton Suit and requested that Mid-Continent tender a defense and indemnity to them in the Clayton Suit. On July 24, 2018, Mid-Continent responded by offering a defense, subject to a reservation of rights. Mid-Continent notified the Insureds that attorney Britt Harris had been retained by Mid-Continent to defend all Insureds in the Clayton Suit.

4

The terms of the relevant insurance policy include the following language:

I.  Insuring Clause

A. The Insurer will pay on behalf of the Insured Loss resulting from any Claim first made against any of them during the Policy Period or Optional Extension Period, if applicable.

B. The Insurer has the right and duty to defend any Claim to which this insurance applies, even if the allegations of the Claim are groundless, false or fraudulent. The Insurer may investigate and settle any Claim as the Insurer deems expedient, but the Insurer is not obligated to pay any Loss or defend any Claim after the Limit of Liability has been exhausted by payment of Loss.

II. Definitions
. . .

B. "Claim" means:

(1) any written notice received by any Insured that any person or entity intends to hold such Insured responsible for a Wrongful Act; or

(2) any judicial or administrative proceeding initiated against any Insured seeking to hold such Insured responsible for a Wrongful Act including any appeal therefrom.

C. "Defense Cost" means reasonable and necessary legal fees and expenses incurred by any attorney designated by the Insurer to defend the Insureds and all other fees, costs, costs of attachment or similar bonds (but without any obligation on the part of the Insurer to apply for or furnish such bonds) and expenses incurred by the Insurer resulting

5

from the investigation, adjustment, defense and appeal of a Claim, but does not mean salaries, wages, or overhead or benefits expenses of the Insureds.

. . .

III. Exclusions

. . .

B. The Insurer shall not be liable to pay Loss resulting from any Claim:

(4) based upon or attributable to any of the Insureds gaining in fact any profit, remuneration, or advantage to which such Insured was not legally entitled[.]

. . .

V. Settlements and Cooperation

B. … The Insureds shall not, except at personal cost, make any payment, admit any liability, settle any Claims, assume any obligation, or incur any expense without the Insurer's written consent.

In its reservation of rights letter, Mid-Continent informed the Insureds that the policy exclusion III. B. (4) may preclude or limit coverage under the policy if it is determined that the claim made in the Clayton Suit falls within that exclusion.

After receiving Mid-Continent's reservation of rights letter, Stilwell responded by letter dated August 1, 2018, stating that there was "the possibility of a conflict [of interest] in representation regarding Mid-Continent's desire to have a single attorney represent all (3) defendants

6

in the case." Stilwell further stated that "[d]ue to potential differences in interest by and between the directors, and the Board as a whole, the three defendants currently have separate representation in the lawsuit." Stilwell further stated that he "would be discussing Mid-Continent's reservation of rights with the Defendants with respect to whether the exclusion raised in the letter raises an actual conflict of interest with the insurer controlling the defense of the lawsuit." Stilwell's letter concluded:

> Given Mid-Continent's reservation of rights, and the current representation by three separate attorneys due to potential conflicts with joint representation, as well as the need to discuss these issues with the insureds, I will be back in touch with you regarding the parties' positions in response to your letter after the District's next regularly scheduled board meeting on August 27, 2018.

Robert Bryant, a claims adjuster for Mid-Continent, wrote Stilwell on September 21 and October 25 stating that Mid-Continent "presently agree[d] to provide coverage" to the Insureds, subject to a reservation of rights. Bryant also requested Stilwell let Mid-Continent know if Harris could proceed forward in defending the Clayton Suit for the Insureds. Bryant wrote to Stilwell again on November 21, informing him that Mid-Continent had consulted with a coverage attorney, Brent Cooper, "regarding the matter of whether or not a potential disqualifying conflict

7

of interest exists to preclude [Mid-Continent's] ability to select defense counsel." According to Bryant, Cooper opined that Mid-Continent had the right to select defense counsel "because the facts to be adjudicated are not necessarily the same facts that control coverage." The Clayton Suit was eventually dismissed in favor of all Insureds.

*Insureds Demand for Reimbursement*

On February 1, 2019, after the Clayton Suit had been dismissed, Stilwell wrote Bryant and Mid-Continent claims supervisor Roderick Evans, demanding reimbursement for attorneys' fees and expenses. Stilwell stated, "Because of the potential conflicts with joint representation as well as the existence of actual conflicts due to your reservation of rights letter, the insureds defended the case with counsel of their choosing[.]" According to the letter, on January 29, 2019, during the trial, Clayton voluntarily dismissed his suit against the Insureds with prejudice. Stilwell then informed Mid-Continent that the attorneys who defended the Insureds in the Clayton Suit would submit their final invoices for reimbursement of the costs of defense.

On May 14, 2019, Mid-Continent forwarded a letter to Christopher Skinner, the general counsel for MUD 400, denying the claims for

reimbursement of the fees incurred by counsel chosen by the Insureds in the defense of the Clayton Suit. Citing section V. B. of the insurance policy, Mid-Continent informed the Insureds that expenses that are incurred "without the Insurer's (Mid-Continent) written consent will not be covered by the Insurer or reimbursed to the Insured." Furthermore, in the letter Mid-Continent asserted that case law dictates that independent or outside counsel's fees will only be reimbursed when there is an actual conflict of interest regarding coverage that arises, and since no such conflict of interest existed in the Clayton Suit, the fees and expenses incurred by MUD 400's independent counsel are not covered under the insurance policy and Mid-Continent has no duty to reimburse the invoices submitted.

Stilwell sent a pre-suit demand letter to Mid-Continent on July 10, 2019, demanding payment of the Insureds' attorneys' fees in the amount of $151,759.60 for defense of the Clayton suit plus $5600 in attorneys' fees for defending the wrongful denial. Stilwell's letter again referenced potential conflicts between the Insureds, stating that:

> Mid-Continent stated that it had hired a single attorney to represent all three defendants (despite the potential for conflicts between the parties…for instance, Ann Marie Wright and Mr. Clayton ran on a slate together in the election,

9

against Cheryl Smith and other candidates. Additionally, MUD 400 sought to defend the election through trial, when the individual directors may have wanted a do-over or a settlement. The potential conflicts between the parties prevented a single attorney from fully and zealously representing the differing interests of all three parties).

On November 30, 2020, Mark Lewis, a Mid-Continent attorney, mailed Stilwell a check made out to MUD 400 for $4290 to pay the fees generated by Stilwell's firm between the time that Stilwell first provided a copy of Clayton's petition to Mid-Continent and the time that Mid-Continent offered to assume the defense of the Clayton Suit, under a reservation of rights. Stilwell did not return the check but wrote to Lewis and stated, "any deposit of it will not be in accord or satisfaction of MUD 400's claim or ongoing lawsuit; and will not and does not release its claims against Mid-Continent."

*Insureds' Suit Against Mid-Continent*

MUD 400, Wright, and Smith filed suit against Mid-Continent for the alleged wrongful refusal to pay for the attorneys' fees, expenses, and costs they paid their attorneys to defend the Clayton Suit. MUD 400's second amended petition – the live pleading before us – asserts claims for breach of contract, violations of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. Mid-Continent filed a Traditional

10

and No-Evidence Motion for Summary Judgment or Partial Summary Judgment, contending that Mid-Continent offered to defend the Insureds in the Clayton suit under a reservation of rights, but the Insureds rejected the defense attorney chosen by Mid-Continent and hired its own attorneys. Mid-Continent argued:

> Unless an actual conflict of interest existed between [the Insureds] and Mid-Continent, Mid-Continent had the right to choose defense counsel for [the Insureds] in the underlying claim, and Mid-Continent had no obligation to pay the fees of attorneys it did not hire. As a matter of law no such conflict existed. Consequently, Mid-Continent is not liable to pay the [Insureds'] defense costs.

According to Mid-Continent, in the Clayton Suit, no conflict of interest existed between Mid-Continent and the Insureds, and no conflict of interest was established between the individual insureds and the MUD 400. So, Mid-Continent argues, the Insureds had no right to choose their own counsel, and there was no need for separate counsel. Mid-Continent contends it complied with the legal and contractual obligations under the policy, and it has no obligation to pay and no liability to the Insureds, as a matter of law.

The trial court denied Mid-Continent's motion for summary judgment and gave the parties permission to seek a permissive interlocutory appeal of the order.[2] The order states in relevant part:

Having reviewed the Defendant's Motion for Summary Judgment, the Response, the two Supplemental Responses, and the Reply, the Court rules that:

(1) Mid-Continent Casualty Company had a duty to reimburse its insureds for fees and expenses incurred by attorneys chosen by the insureds to defend the insureds in the underlying lawsuit; therefore, the Court DENIES Defendant's Traditional and No-Evidence Motion for Summary Judgment; and

(2) Mid-Continent Casualty Company had a duty to reimburse its insureds for the costs that they incurred in hiring separate counsel to defend each insured in the underlying election contest; therefore, the Court DENIES Defendant's Traditional and No-Evidence Motion for Summary Judgment.

The Court has determined that this order involves controlling questions of law as to which there are substantial differences of opinion, and an immediate appeal from the order may materially advance the ultimate termination of the litigation.

The controlling questions of law include:

(1) whether Mid-Continent Casualty Company had a duty to reimburse its insureds for fees and expenses incurred by attorneys chosen by the insureds to defend the insureds in the underlying lawsuit; and

_____

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d).

12

(2) whether Mid-Continent Casualty Company had a duty to reimburse its insureds for the costs that they incurred in hiring separate counsel to defend each insured in the underlying election contest.

We granted review of the permissive appeal of the trial court's Second Amended Order Denying Defendant's Motion for Summary Judgment.[3]

*Duty to Defend Under Eight-Corners Rule*

In the insurance policy at issue here, Mid-Continent had certain obligations to defend the Insureds. The duty to defend is distinct from, and broader than, the duty to indemnify.[4] An insurer must defend its insured if the third-party plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured for the underlying claim.[5] Thus, an insurer may have a duty to defend but, in the long run, no obligation to indemnify.[6]

---

[3] *See* Tex. R. App. P. 28.3(k).

[4] *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008).

[5] *Id.*

[6] *Id.* at 490-91.

13

Whether an insurer owes a duty to defend "is a question of law which the appellate court reviews de novo."[7] In determining a duty to defend, we follow the eight-corners rule, sometimes called the complaint-allegation rule.[8] "The rule directs Texas courts to determine an insurer's duty to defend its insured based on (1) the pleadings [filed] against the insured and (2) the terms of the insurance policy."[9] Under the eight-corners rule, an insurer's duty to defend its insured from a underlying suit is determined by the pleadings and allegations in the underlying suit (here the Clayton Suit), considered in light of the policy provisions, without regard to the truth or falsity of those allegations.[10] The eight-corners rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the plaintiff's pleading.[11] Extrinsic evidence or facts outside the

---

[7] *E & L Chipping Co., Inc. v. Hanover Ins. Co.*, 962 S.W.2d 272, 274 (Tex. App.—Beaumont 1998, no pet.).

[8] *Zurich Am. Ins. Co.*, 268 S.W.3d at 491.

[9] *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 199 (Tex. 2022).

[10] *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006).

[11] *Id.*

eight-corners are only considered in limited circumstances, which do not apply here.[12]

*Right to Control Defense*

Liability insurance policies, like the one at issue here, typically confer on an insurer the right to control the defense of claims against the insured.[13] The insurer's right of control generally includes "the authority to select the attorney who will defend the claim and to make other decisions that would normally be vested in the insured as the named party in the case."[14]

Under certain circumstances, however, an insurer may not insist upon its contractual right to control the defense.[15] The insurer's right to control the defense gives way when the insurer is burdened by a conflict

---

[12] *See Monroe,* 640 S.W.3d at 201.

[13] Unauthorized Practice of Law Comm. v. Am. Home Assur. Co., Inc., 261 S.W.3d 24, 26 (Tex. 2008).

[14] *N. Cty. Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685, 688 (Tex. 2004).

[15] *Id*. In *Davalos*, the Supreme Court also provided other examples of when an insured might be allowed to refuse the insurer's offered defense and seek damages for a breach of the duty to defend, but none of those other examples are at issue in this case. *See In re Farmers Tex. Cty. Mut. Ins. Co.*, 621 S.W.3d 261, 269 (Tex. 2021) (citing *Davalos*, 140 S.W.3d at 689).

of interest.[16] "Ordinarily, the existence or scope of coverage is the basis for a disqualifying conflict. In the typical coverage dispute, an insurer will issue a reservation of rights letter, which creates a potential conflict of interest."[17] "[W]hen the facts to be adjudicated in the liability lawsuit are the same facts upon which coverage depends, the conflict of interest will prevent the insurer from conducting the defense."[18] Thus, a potential conflict is not sufficient to entitle insureds to independent counsel.[19] Rather, a conflict of interest exists that prevents the insurer from controlling the defense when the insurer has reserved its rights and the facts to be adjudicated in the underlying suit are the same facts upon which coverage depends.[20]

---

[16] *Id.* at 688-89; see also *Partain v. Mid-Continent Specialty Ins. Servs. Inc.*, 838 F.Supp.2d 547, 566 (S.D. Tex. 2012).

[17] *Davalos*, 140 S.W.3d at 689.

[18] *Id.*

[19] *Id.* at 689-90; *Allstate Cty. Mutual Ins. Co. v. Wootton*, 494 S.W.3d 825, 837 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

[20] *Wootton*, 494 S.W.3d at 837.

Discussion

*Did Mid-Continent owe a duty to reimburse the Insureds for fees and expenses incurred by attorneys chosen by the Insureds to defend the Insureds in the Clayton Suit?*

The parties both describe the Clayton Suit as an election contest. And the title of the Petition in the Clayton Suit describes the claim as an "election contest." To succeed on a claim for an election contest, the claimant must prove that the outcome of the contested election, as shown by the final canvass, is not the true outcome because either illegal votes were counted, or an election officer or other person officially involved in the administration of the election prevented eligible voters from voting, failed to count illegal votes, or engaged in other fraud or illegal conduct or made a mistake.[21] Mid-Continent argued in the trial court and on appeal that no facts upon which coverage depends would be adjudicated in the resolution of the Clayton Suit. MUD 400 disagrees and asserts that the issue presented in Mid-Continent's reservation of rights letter would be based on facts to be adjudicated in the Clayton Suit.

The Insureds argue that the "plain wording of the exclusion precludes coverage if: (1) An insured received an advantage; and (2) that

---

[21] Tex. Elec. Code Ann. § 221.003(a).

17

advantage was one the insured was not legally entitled to." According to the Insureds, "Mid-Continent raised this exclusion due to Clayton's allegations that both Wright and Smith had received the advantage of illegal votes (and no one is entitled to illegal votes)." Furthermore, according to the Insureds, Clayton's "lawsuit also alleged that MUD 400 had received the advantage of not holding and paying for a new election (when it was not entitled to certify the prior election due to illegal votes)."

In its reservation of rights, Mid-Continent informed the Insureds that it reserved the right to decline coverage for "Loss resulting from any Claim based upon or attributable to any of the Insureds gaining in fact any profit, remuneration, or advantage to which such Insured was not legally entitled…." Because Mid-Continent's insurance policy excludes coverage for loss resulting from the Insureds gaining "any profit, remuneration, or *advantage*" to which such Insureds are not legally entitled, we must determine if this exclusion is dependent upon the facts to be adjudicated in the Clayton Suit. The Insureds contend that the key word here is the word "advantage." The term "advantage" is not defined in the policy. In construing the term *advantage*, here we apply the traditional canon of *noscitur a sociis* – "'that a word is known by the

18

company it keeps.'"[22] Accordingly, "advantage," like "profit" and "remuneration," in this context must refer to something like a monetary advantage. Applying this traditional rule of construction, ordinary people would read Exclusion III. B. (4) of the policy to exclude coverage of a monetary advantage gained by the Insureds to which they were not legally entitled to receive.

In the underlying suit, Clayton's petition refers to several election irregularities. The irregularities alleged by Clayton include the District failing to properly conduct early voting by having an inaccessible voting trailer and having only one election official present at the voting trailer; ballots by mail being improperly handled and thus having no way to determine if ballots by mail were properly accepted, rejected, or counted; and a failure to properly record voter information in the Combination Form during early voting and on election day, making all of the votes illegal votes. None of these allegations are monetary advantages gained by the Insureds.

---

[22] *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 750 (Tex. 2006) (quoting *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575 (1995)).

Mid-Continent argues that the *Davalos* "same facts" requirement is not met because the facts to be adjudicated in the underlying lawsuit – election irregularities – were not the same facts upon which coverage depended – the Insureds receiving an advantage to which they were not legally entitled. Moreover, Mid-Continent urges that to prevail in the underlying lawsuit, Clayton did not have to prove that the Insureds received any advantage, but rather Clayton had to prove that eligible voters were denied the right to vote or that the irregularities were such as to usurp or render a determination of the will of the voters.

After examining the allegations in the Petition and the wording in the policy, and applying *Davalos*, we agree with Mid-Continent that the facts upon which coverage depends will not be adjudicated in the underlying election contest suit. Nowhere in Clayton's pleadings does Clayton allege that Wright, Smith, or MUD 400 received a monetary advantage. The pleadings fail to allege that either Wright or Smith received illegal votes. Along those same lines, MUD 400's argument that it received the "advantage" of not holding and paying for a new election may mean MUD 400 avoided further expense of a new election, but it does not mean that the election of May 18th provided MUD 400 with a

20

monetary advantage. Rather, at most, it means MUD 400 would avoid a disadvantage if the election was not set aside as void. Furthermore, the trial in the Clayton Suit, based on the allegations in the Clayton Petition, would not adjudicate whether the Insureds received a monetary advantage to which they were not legally entitled. On the facts before us in this case, we conclude that the election contest as alleged in the Clayton Suit does not give rise to a disqualifying conflict of interest between the Insureds and Mid-Continent.

*Did Mid-Continent owe a duty to reimburse its Insureds for the costs they incurred in hiring separate counsel to defend each Insured in the Clayton Suit?*

Texas Disciplinary Rules of Professional Conduct Rule 1.06 governs conflicts of interest in representation.[23] In relevant part, the rule provides that a lawyer shall not represent a person if the representation of that person "involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm[.]"[24] A lawyer may only represent multiple clients in a substantially related matter if (1) the

---

[23] Tex. Disciplinary Rules Prof'l Conduct R. 1.06.
[24] *Id.* 1.06(b)(1).

21

lawyer reasonably believes the representation of each client will not be materially affected and (2) each of the clients consent after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved.[25]

As evidence of a conflict between the Insureds that necessitated separate counsel for each Insured, MUD 400 relied on deposition and affidavit testimony from attorneys Bruce Tough (who represented Wright in the Clayton Suit), Kenna Seiler (who represented Smith in the Clayton Suit), and Chris Skinner (general counsel for MUD 400). The deposition testimony and affidavit generally averred that a MUD 400 board meeting discussion uncovered material conflicts among Wright, Smith, and MUD 400; that the three Insureds would not waive those conflicts, and that the Insureds requested separate counsel. Moreover, MUD 400 contends that Mid-Continent "received actual notice of the multi-party conflict[]" "by phone call and by letter that potential conflicts between the three defendants to the Clayton lawsuit precluded all three from being represented by a single attorney[.]"

---

[25] *Id.* 1.06(c).

We conclude that MUD 400's arguments are without merit. Appellees contend there was a conflict as supported by the deposition and affidavit testimony of the three attorneys which contain legal conclusions that all three Insureds required separate counsel because of conflicts. Of importance here, we note that the information on which Appellees rely falls outside the eight-corners of the pleadings and the insurance policy.[26] Additionally, that evidence contains legal conclusions which are insufficient to defeat summary judgment.[27]

Next, based on the evidence in the record, it appears that from the time Mid-Continent received notice of the claim to the time the trial was concluded, Mid-Continent had the policy, Stilwell's letters, and Clayton's petition. To be sure, Stilwell's August 1st letter references "potential" conflicts or the "possibility" of conflicts. In fact, his letter references "potential" conflicts at least four times – but the letter does not state that there are actual conflicts. Stilwell's August 1st letter also states he needs to discuss the *potential conflicts* with the insureds. In Stilwell's February

---

[26] *Monroe Guar. Ins. Co.*, 640 S.W.3d at 199.

[27] *See Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984); *Marquis Acquisitions, Inc. v. Steadfast Ins. Co.*, 409 S.W.3d 808, 814 (Tex. App.—Dallas 2013, no pet.).

1st letter, he informed Mid-Continent of the voluntary nonsuit of the Clayton Suit, but the letter still refers only to "potential conflicts with joint representation."

Applying the eight-corners rule, we conclude that Clayton's petition did not allege facts that would necessitate separate counsel. Clayton does not allege anything in his petition that would make the interests of Wright, Smith, or MUD 400 adverse to the interests of each other. Nor did Clayton allege facts that would limit a single lawyer's responsibilities to each Insured. Instead, the petition alleges that violations of the Texas Election Code occurred, specifically that (1) illegal votes were counted because voters were not prevented from voting more than once, and individuals who were not entitled to vote cast votes that were counted; (2) voters who were eligible to vote were turned away from the polls due to failures with availability of the temporary voting trailer; and (3) election officials were engaged in fraud, illegal conduct, or made mistakes regarding the ballots by mail that resulted in ballots by mail not being counted, verified, or authenticated.

To sum it up, Clayton's petition does not allege facts or claims that indicate there is a conflict between the Insureds, and Stilwell's letters

24

describe only "potential conflicts" between the Insureds. We therefore conclude that Mid-Continent had no duty to reimburse its Insureds for the costs they incurred in hiring separate counsel to defend each Insured in the Clayton Suit.

*Additional Issues Raised by Mid-Continent on Appeal*

In its appellate brief, Mid-Continent raised additional issues that were not specifically identified as controlling questions by the trial court. Those additional issues include whether Mid-Continent is entitled to summary judgment on MUD 400's extra-contractual claims, that is, MUD 400's claims for the breach of the duty of good faith and fair dealing and to summary judgment on the Insurance Code claims.

When we accept a permissive appeal, we must "do what the Legislature has authorized and 'address the merits of the legal issues certified.'"[28] This includes "addressing all fairly included subsidiary issues and ancillary issues pertinent to resolving the controlling legal issue."[29]

---

[28] *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 147 (Tex. 2022) (quoting *Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 733 (Tex. 2019)).

[29] *Id.*

25

Here, the controlling questions of law that were certified to us were whether Mid-Continent had a duty to reimburse its insureds for fees and expenses incurred by attorneys chosen by the insureds to defend the insureds in the underlying lawsuit and (2) whether Mid-Continent had a duty to reimburse its insureds for the costs that they incurred in hiring separate counsel to defend each insured in the underlying contest.

In resolving the trial court's controlling questions of law, we concluded that Mid-Continent offered to defend the Clayton Suit with an attorney selected by Mid-Continent, the Insureds rejected the offer, and the Insureds chose their own attorneys, and Mid-Continent had a reasonable basis to deny the requests for reimbursement because no conflict of interest existed between the petition and the policy (addressing issue one) and no conflict of interest existed between the Insureds themselves (addressing issue two). The alleged claims for bad faith and Insurance Code violations are ancillary issues that were not certified by the trial court, and we decline the invitation to examine and decide these additional issues because we are confident that given our resolution of

26

the two certified issues, the trial court will be able to decide whether these additional claims have any merit.[30]

Conclusion

For the foregoing reasons, we conclude Mid-Continent had no duty to reimburse its Insureds for fees and expenses incurred by attorneys chosen by the Insureds to defend the Insureds in the Clayton Suit. Furthermore, we conclude that Mid-Continent had no duty to reimburse its Insureds for the costs they incurred in hiring separate counsel to defend each Insured in the Clayton Suit. Therefore, the trial court erred in ruling that Mid-Continent owed a duty to pay its Insured for fees and expenses incurred by attorneys chosen by the Insureds to defend the Insureds in the Clayton Suit. We therefore reverse the trial court's judgment and remand the matter for further proceedings consistent with this opinion.

---

[30] The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018).

REVERSED AND REMANDED.

_____
LEANNE JOHNSON
Justice

Submitted on April 6, 2023
Opinion Delivered August 31, 2023

Before Golemon, C.J., Horton and Johnson, JJ.