In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-24-00452-CV
_____

**DAVID EVERTON, AMANDA EVERTON, AND
JORGE JACOBO OROZCO SR., Appellants**

**V.**

**LYDIA MARICELO TABOADA, AND JOEY "SERGIO" SOTO,
AND SOUTHERN MONTGOMERY COUNTY
MUNICPAL UTILITY DISTRICT, Appellees**

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 24-10-15753-CV**

**MEMORANDUM OPINION**

In this interlocutory appeal, David and Amanda Everton (jointly, "the Evertons" and separately, "Amanda" or "David") and Jorge Jacobo Orozco Sr. (collectively, "Appellants") challenge the trial court's denial of their application for temporary injunction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (allowing interlocutory appeal of order granting or refusing temporary injunction).

1

By way of a petition for writ of mandamus, they also challenge the trial court's denial of their Motion to Disqualify Defendant Lydia Maricelo Taboada's counsel, who her insurer retained to represent her. *See In re Basco*, 221 S.W.3d 637, 639 (Tex. 2007) (citation omitted) ("When a trial court improperly denies a motion to disqualify opposing counsel, there is no adequate relief by appeal.").

In three issues, Appellants ask whether the trial court: (1) abused its discretion in refusing to disqualify Mid-Century's panel counsel when the facts for adjudication in the liability suit will determine coverage; (2) abused its discretion by denying disqualification under Rule 106(b) of the Texas Rules of Disciplinary Conduct because the incongruent interests of panel counsel, the carrier, and the insureds when the facts for adjudication of liability and coverage overlap preventing panel counsel from ethical representation of the insured; and (3) abused its discretion in denying temporary injunctive relief where the Court previously found a probable right to recovery, the evidence shows communications between Taboada and Mid-Century threaten to defeat coverage, and loss of coverage would irreparably harm both insureds and the Evertons' ability to recover. We hold that: (1) the Appellants have failed to show the trial court clearly abused its discretion by denying their Motions to Disqualify Taboada's carrier-selected counsel, thus they are not entitled to mandamus relief; and (2) the Appellants have failed to establish the trial court

2

abused its discretion in denying the temporary injunction. We affirm the trial court's orders and deny the petition for writ of mandamus for the reasons discussed below.

## I. BACKGROUND

Since there has been no reporter's record filed of any hearing, and the Evertons' docketing statement indicates they did not request one, we take our recitation of the facts from the parties' pleadings in the clerk's record.

### A. The Evertons' Petition and First Application for Injunctive Relief

In October 2024, the Evertons filed a Petition and Application for Injunctive Relief (the Petition). In the Petition, they named Taboada, Orozco and Joey "Sergio" Soto as defendants. They purchased their home in 2006 and alleged that Taboada and Orozco (collectively the Taboada Defendants), who were previously married, began residing in the home next door to the Evertons' property in July 2019. They claimed they never had any water come on their property before the Defendants moved in. They alleged water from the Taboada property inundated the Everton property.

They alleged that after the Taboada Defendants moved in, the Taboada Defendants, and their guests or business invitees "have routinely driven over high-pressure water lines to the right of their driveway." The Evertons alleged that this happened repeatedly and outlined various instances when it occurred. The Evertons asserted that initially when the Taboada Defendants moved in and up until June 1,

3

2024, anytime this happened, the Taboada Defendants either repaired the broken water lines or reimbursed the Evertons for the repairs. The Evertons also asserted that after the time period referenced above, the Taboada Defendants refused to repair leaking high-pressure water lines, which caused water to inundate the Evertons' property, damaging their home.[1]

The Evertons asserted that in June 2024, the Taboada Defendants "had multiple breaks in their sprinkler system piping and/or nozzles which the Evertons reported to Orozco" while he still lived with Taboada. When the Taboada Defendants failed to repair the high-pressure line breaks, Amanda called Southern Montgomery County Municipal Utility District ("SMCMUD"), who turned off the Taboada Defendants' main water valve. The Evertons claimed that Orozco informed them as he moved out that Taboada now owned the house, and he told her to repair the lines, but she did not. The Evertons alleged, "For the next two-weeks, approximately 67,000 gallons of water, according to SMCMUD, inundated the Evertons' yard, penetrating the soil around and under the foundation and into the Evertons' house causing an estimated $100,000 in damage to the Evertons' property."

They alleged that after they called several times, on July 1, 2024, SMCMUD shut off Taboada's water but failed to lock the water meter. The Evertons asserted

---

[1]The Evertons also later sued Southern Montgomery County Municipal Utility District ("SMCMUD"), but they are not parties to this appeal.

4

that after this shutoff, Taboada hired a plumber to repair the breaks, but after July 2024, the leaks continued with broken lines. The Evertons alleged that since July 2024, a cycle developed where lines would break, they would inform Taboada, Taboada refused to repair them, SMCMUD then would turn off Taboada's water but fail to lock her out, so Taboada would "sneak" out and turn the main water valve back on. Then, the leaks resumed, saturating the Evertons' yard and penetrating their foundation.

The Evertons alleged that in late September and early October 2024, a significant flooding event caused by more ruptured lines on Taboada's property happened while they were out of town, which resulted in "extensive flooding" of their home. In connection with this incident, on October 4, 2024, they had SMCMUD turn off Taboada's water, but SMCMUD "would not lock it," and Taboada turned it back on. So, on October 6, 2024, they called SMCMUD again; SMCMUD determined there were now two leaks, "one at the Evertons' meter immediately adjacent to the Taboada Property water meter and one at the Taboada water meter." According to the Evertons, SMCMUD again turned off the water but refused to lock it. The Evertons' hired a plumber to repair the break at their meter, who informed them that a vehicle had driven over it, and the repairs cost them $1,379.97. On October 8, 2024, SMCMUD again determined that Taboada's water lines near the meter were leaking.

The Evertons allege that in October 2024, Amanda, accompanied by SMCMUD, tried to determine whether Defendants' water lines were still leaking, but Soto[2] "emerged from the Taboada house and began verbally assaulting" her "to intimidate her to stop complaining about the ongoing flooding of her home." Amanda claims she then called the police to have them assist as she investigated.

According to the Evertons, SMCMUD repeatedly investigated and determined Defendants' high pressure water lines are leaking. The Evertons assert that "water continues to inundate [the Evertons'] home warranting injunctive relief and a protective order[.]" The Evertons seek a declaratory judgment and asserted causes of action for violations of the Texas Water Code, trespass to real property, negligence, nuisance, assault, intentional infliction of emotional distress, and gross negligence. In addition to property damage, the Evertons allege they suffered physical problems from the water intrusion. The Evertons seek damages for: cost of repair and valuation damages; personal injuries; exemplary damages; and attorney's fees. They assert that Taboada, Orozco, and Soto are jointly and severally liable.

The Evertons seek a temporary and permanent injunction under Texas Civil Practice and Remedies Code section 65.011. They incorporated their pleaded causes of action, allege they have a probable right to the relief sought, and a probable,

---

[2] It is unclear what relation Soto is to Taboada and Orozco, if any, or whether he also resides in the Taboada home.

imminent, and irreparable injury in the interim. They assert that Defendants have a duty to repair the lines to prevent flooding of the Evertons' home. They support their Petition and Application for Injunctive Relief with Amanda's Affidavit, which outlined the history of the damaged pipes and Taboada's and Orozco's failure to repair, along with the Evertons' claimed damages. In her Affidavit, Amanda stated that the court should "have Mrs. Taboada and Mr. Orozco's water main turned off and locked until there is a permanent fix." On October 9, 2024, the Evertons filed a Notice of Hearing setting their Application for Temporary Restraining Order for hearing on October 10, 2024. Another Notice of Hearing the Evertons filed on October 18, 2024, stated the Temporary Injunction Hearing was set for October 24, 2024.

## B. Representation of Orozco

Two days before the scheduled Temporary Injunction Hearing, attorney Jennifer Reekie filed a Notice of Appearance and Defendant's Original Answer on behalf of Orozco. Orozco asserted a general denial.

## C. Agreed Temporary Injunction

On October 24, 2024, the parties and the trial court signed an Agreed Temporary Injunction. The Agreed Temporary Injunction indicates that Taboada and Soto personally appeared pro se and that Orozco appeared with his attorney. The Agreed Temporary Injunction states, among other things,

7

The Court finds that [the Evertons] have valid causes of action against [Taboada], that they have a probable right of recovery on their causes of action, and that they face a probable, imminent and irreparable harm in the absence of this Temporary Injunction insofar as it appears that [Taboada] has continuously cause[d] water intrusion onto Plaintiffs' real property which is destructive in nature.

[. . .]

IT IS ORDERED that [Taboada], her assigns, and all persons or entities acting in concert with or at the direction of [Taboada] shall, within 14 days from the time the MUD moves the water meter on her property, hire a licensed plumber to reconnect the water to the house on her real property and to cap the water sprinklers which are on the side of the driveway adjoining [the Evertons'] real property and shall, until the MUD moves the water meter on her real property turn off sprinkler service for the zone which includes the sprinkler heads which are on the side of the driveway adjoining [the Evertons'] real property so that those sprinklers are not used.

## D. Taboada's Original Answer

Shortly after the trial court signed the Agreed Temporary Injunction, on November 4, 2024, attorney Sarah Holley Long filed Taboada's Original Answer and Jury Demand, which included a general denial.

## E. The Evertons' Amended Petition

On November 15, 2024, the Evertons' filed an Amended Petition and added SMCMUD as a defendant. They asserted the same causes of action as in their Original Petition, including: declaratory relief; violations of the Water Code; trespass to real property; gross negligence; negligence; nuisance; assault; and intentional infliction of emotional distress. They also included another claim for

8

injunctive relief again asserting that the Defendants have a duty to repair the lines to prevent the flooding of the Evertons' home.

They supported the Amended Petition with Amanda's Amended Affidavit. Amanda's Amended Affidavit again outlined the history of burst pipes, repairs, and water inundation into the Evertons' property. Amanda explained that on November 5 and 6, 2024, SMCMUD relocated Taboada's meter and their water meter. Amanda also stated that "despite agreeing to move both meters and the underlying water lines, the SMCMUD only relocated the meters themselves, leaving the high-pressure water lines in the same hazardous area." She complained that an SMCMUD employee "took no action to move the lines away from the edge of the driveway, leaving them in the same vulnerable location[,]" and "instead of relocating the underlying water lines, replaced the pipes with newer, more 'flexible' piping." Amanda also averred, "On November 8, 2024, Mid-Century Insurance Company of Texas issued a reservation of rights letter." She stated that the insurer denied coverage for gross negligence, intentional acts, code violations, assault, nuisance, trespass, and exemplary damages but did not exclude coverage for negligence.

## F. Motions to Disqualify Taboada's Attorney and Second Application for Injunctive Relief

On November 22, 2024, the Evertons filed their Motion to Disqualify Sarah Holley Long and Application for Injunctive Relief. The Evertons sought to

disqualify opposing counsel, Long and her law firm, under the independent counsel rule and Rule 1.06(b) of the Texas Rules of Disciplinary Conduct. The Evertons also sought "to enjoin Taboada and [Orozco] from accepting representation by carrier-appointed counsel and communicating [to] their insurance carriers or carrier-appointed counsel any facts related to this litigation." The Evertons contended that the facts that will determine coverage under the insurance policies are the same facts that will determine liability. Thus, they argued that "Mid-Century cannot be permitted to control Taboada's defense through appointed counsel while simultaneously maintaining coverage defenses that create irreconcilable conflicts." They further asserted that the conflicts could only be remedied by allowing the insureds to select independent counsel at the insurer's expense.

The Evertons argued that Taboada and Orozco had a Farmers insurance homeowners policy numbered 0767316108 issued to Orozco for a period covering the dates in question. They also claimed Farmers issued an automobile policy through Mid-Century Insurance Company of Texas ("Mid-Century") numbered 0537191161 covering Orozco and Taboada for the relevant period. They asserted that Orozco and Taboada were divorcing in June 2024, when a leak occurred in early June 2024. The Evertons claimed that in June 2024, Orozco informed Taboada she needed to repair the leaks between their driveway and the Evertons' property, but neither Taboada nor Orozco did. The Evertons stated that on June 21, 2024, Taboada

10

recorded a deed for the property at issue per the divorce settlement but did nothing to resolve the water leaks until the first week in July. They contended that additional breaks occurred between July and September causing more "water inundation" and damage to the Evertons' home.

The Evertons explained that Amanda "aided Taboada in making a claim against her Homeowner's Policy," and Farmers assigned a claim number, but denied the claim on August 21, 2024, under Orozco's Homeowner's Policy citing "specific exclusions." They also contended that Farmers failed to interview Orozco about the occurrence. According to the Evertons, Orozco filed a claim under his automobile policy; Mid-Century assigned a claim number and in July 2024, instructed Orozco to mitigate his damages. On September 25, 2024, Mid-Century denied the claim because Orozco drove a vehicle uncovered by his automobile policy.

According to the Evertons, on November 8, 2024, Mid-Century issued the reservation of rights letter to deny coverage for intentional acts but acknowledging coverage for negligence. The Evertons argued that liability in this case "turns on whether" the damage they suffered "resulted from Taboada and Orozco's negligence which would be covered under the policy or from intentional or reckless conduct in upkeep and maintenance which would be excluded from coverage." They contended the "factual overlap creates an irreconcilable conflict for carrier-selected counsel" who must develop evidence regarding Taboada and Orozco's knowledge of the leaks,

11

their decisions whether to repair the leaks, and their intent regarding the water issues. The Evertons asserted the "same facts would simultaneously determine both liability and coverage." They contend that Taboada and Orozco should be able to select independent counsel and require the insurer to reimburse them. Finally, the Evertons claim "they have an economic interest in Taboada and Orozco's coverage under the Mid-Century policy."

In support of their request for injunctive relief, the Evertons asserted they "face irreparable injury because once either insured communicates facts that could defeat coverage under the joint policies, that harm cannot be undone." They contended that would permanently compromise their ability to recover for the damage to their home. The Evertons asked that the trial court disqualify Long and her law firm. They also sought a temporary injunction preventing "Mid-Century from selecting counsel or directing" Taboada's and Orozco's defense and prohibiting Taboada and Orozco "from discussing the facts of this litigation with Mid-Century or any of its appointed attorneys."

The Evertons attached Amanda's verification in support of the Motion to Disqualify Sarah Holley Long and Application for Injunctive Relief. They also supported their Motion to Disqualify and Application for Injunctive Relief with the same Amended Affidavit of Amanda Everton attached to their Amended Petition. The Evertons also attached the following to their Motion: correspondence from Mid-

Century to Amanda denying her claims under Orozco's homeowner's policy and automobile policy; Mid-Century's reservation of rights letter dated November 8, 2024; the Agreed Temporary Injunction signed October 24, 2024; a copy of their Amended Petition; and the Lodestar Affidavit of the Evertons' Attorney with billing records.

On November 25, 2024, Orozco filed his Motion to Disqualify Sarah Holley Long and Application for Injunctive Relief. His Motion to Disqualify contained similar allegations to the Evertons' Motion to Disqualify and included the same evidence. The exception was that Orozco included his unsigned verification and his attorney's Lodestar Affidavit.

On November 27, 2024, the Evertons filed separate Notices of Hearing setting their Motion to Disqualify and the Temporary Injunction for hearing on December 6, 2024. On December 3, 2024, Orozco filed Notices of Hearing for his Motion to Disqualify and Application for Temporary Injunction, which indicated they were also set for hearing on December 6, 2024.

**G. Orozco's Crossclaim**

On November 25, 2024, Orozco also filed his Original Crossclaim and Application for Injunctive Relief. Orozco pleaded a crossclaim against Taboada for negligence. He provided additional information about the timelines of the various water line breaks and the timeline of his and Taboada's divorce. Orozco cited an

13

indemnification clause from his and Taboada's Final Decree of Divorce and sought contribution from her under Texas Civil Practice and Remedies Code section 33.015.

Orozco also sued for declaratory judgment seeking a determination of his "rights, status or other legal relations under his insurance policies with Farmers and obtain a declaration of what those rights, status, and other legal relations thereunder." In conjunction with his claim for declaratory judgment, Orozco contended that the independent counsel rule and Rule 1.06(b) allows for disqualification of the insurer's appointed counsel. Orozco asserted there was a "genuine controversy" between himself, Taboada, and Farmers Insurance regarding the insurer's "right to appoint panel counsel to represent them[.]" That said, Orozco did not name Farmers or Mid-Century as a defendant.

He attached an unsigned verification to his Crossclaim. By way of relief, Orozco asked the trial court to: (1) declare that he and Taboada are entitled to control their defense by engaging counsel of their choice at Farmers Insurance's expense; (2) award him reasonable attorney's fees and costs; and (3) order Taboada to pay all amounts assessed against Orozco pursuant to the indemnification clause in their Final Decree of Divorce. He also requested general relief.

**H. Taboada's Responses to the Evertons' and Orozco's Motions to Disqualify and Application for Injunctive Relief**

On December 4, 2024, Taboada filed her Response to Plaintiff's Motion to Disqualify Sarah Holley Long and Application for Injunctive Relief and Defendant's Motion for Sanctions. The same day, Taboada also filed her Response to Co-Defendant's [Orozco] Motion to Disqualify Sarah Holley Long and Application for Injunctive Relief and Defendant Taboada's Motion for Sanctions. Taboada argues in both responses that neither the Evertons nor Orozco have standing to complain about a conflict. She additionally contends that even if they did have standing, no conflict exists, and they have not shown actual prejudice. Taboada distinguishes the legal authority cited by the Evertons and Orozco. Among other things, she claimed that they violated the local rules by scheduling the hearing when they did, and Orozco presented an unsigned verification in support of his motion.

**I. The Evertons' Reply to Taboada's Response to Motion to Disqualify**

On December 5, 2024, the Evertons filed their Reply to Taboada's Response to Motion to Disqualify. In their Reply, they contend that under the independent counsel rule, prejudice is presumed when there is an actual conflict of interest, which they assert exists here. Particularly, they argue that an actual conflict exists because the facts determining liability and coverage completely overlap. They also claim they have standing. Alternatively, they contend that prejudice exists through Farmers

coercion of having Taboada write a "Letter Pleading" to defeat coverage while unrepresented and that if they use Taboada's statements to defeat coverage, the Evertons "will likely be unable to recover their documented $100,000 plus in damages." They claim prejudice is "immediate and stems directly from the conflict between Farmers' interests and Taboada's right to coverage." The Evertons assert that Rule 1.06(b) provides an independent basis for standing and disqualification, which opposing counsel can do when a "conflict calls into question the fair or efficient administration of justice." The Evertons re-urge the trial court to disqualify Long and the law firm she works for from representing Taboada. In support of their Reply, the Evertons attached Taboada's "Letter Pleading" with correspondence from the insurance and policy declaration sheets, which they claim show insurance company coercion.

**J. Trial Court's Rulings and Notice of Appeal**

The docket sheet shows that on the scheduled hearing date of December 6, 2024, all parties appeared with counsel, that the motions were heard and taken under advisement but did not indicate whether evidence was taken at the hearing. The notes on the docket sheet also indicate that the motions were "heard and taken under advisement[.]" On December 10, 2024, the trial court signed separate orders denying the Evertons' Motion to Disqualify Sarah Holley Long and Application for Injunctive Relief and denying Orozco's Motion to Disqualify Sarah Holley Long

16

and Application for Injunctive Relief. On December 30, 2024, the Evertons and Orozco filed a Joint Notice of Appeal indicating they were pursuing an accelerated appeal of the motions to disqualify and denial of temporary injunction.

## II. ISSUES ONE AND TWO: DENIAL OF MOTION TO DISQUALIFY

In Appellants' petition for writ of mandamus, they raise two issues challenging the trial court's denial of their Motion to Disqualify Taboada's counsel. In issue one, they contend the "trial court abused its discretion in refusing to disqualify Mid-Century's panel counsel when the facts for adjudication in the liability suit will determine coverage[.]" In issue two, they argue the trial court "abused its discretion by denying disqualification under Rule 106(b) of the Texas Rules of Disciplinary Conduct" given the "incongruent interests of panel counsel, the carrier, and the insureds when the facts for adjudication of liability and coverage overlap preventing panel counsel from ethical representation of the insured[.]"

## A. Standard of Review and Applicable Law

"'Mandamus is available where a motion to disqualify is inappropriately denied as there is no adequate remedy on appeal.'" *In re Turner*, 542 S.W.3d 553, 555 (Tex. 2017) (orig. proceeding) (quoting *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 824 n.2 (Tex. 2010) (orig. proceeding)). We review a trial court's refusal to disqualify a law firm under an abuse of discretion. *See id.* We may issue a writ of mandamus to remedy a trial court's clear abuse of discretion when

17

the relator lacks an adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). "In determining whether a trial court abused its discretion, a reviewing court is generally bound by the record before the trial court at the time its decision was made." *In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) (orig. proceeding). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, without reference to any guiding rules or principles." *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding) (per curiam) (citing *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985)). Disqualifying a party's counsel is a severe remedy which "can result in immediate and palpable harm, disrupt trial court proceedings, and deprive a party of the right to have counsel of his choice." *Id.* "In considering a motion to disqualify, the trial court must strictly adhere to an exacting standard to discourage a party from using the motion as a dilatory trial tactic." *Id.* (citing *Spears v. Fourth Ct. of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990)).

"In Texas, 'standing' denotes the presence of a real controversy between the parties that will actually be determined by the judicial declaration sought." *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 756 (Tex. App.—Fort Worth 2012, pet. denied) (citing *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (other citation omitted)); *see Debes v. General Star Indem. Co.*, No. 09-12-00527-

CV, 2014 WL 3384679, at *2 (Tex. App.—Beaumont July 10, 2014, no pet.) (mem. op.) (citations omitted); *see also Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 685 (Tex. 2020) (discussing standing in context of UDJA). "To establish standing to assert a claim for breach of contract, a party must prove privity to the agreement or that it is a third-party beneficiary." *See Debes*, 2014 WL 3384679, at *2 (citations omitted). Insurance policies are contracts. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Thus, the rights and obligations arising under insurance policies and the rules applied to construe them are generally the same as those pertaining to contracts. *See id.* "Whether an insurer has the right to conduct its insured's defense is a matter of contract." *N. Cnty. Mut. Ins. v. Davalos*, 140 S.W.3d 685, 688 (Tex. 2004). Texas law generally prohibits an injured party from directly suing the defendant's insurer unless it is established by judgment or agreement that the insured has a legal obligation to pay damages to the injured party. *See In re Ill. Nat'l Ins. Co.*, 685 S.W.3d 826, 835–36 (Tex. 2024) (orig. proceeding) (citations omitted). This is referred to as the "no-direct action rule." *See id.* at 836.

"The right to conduct the defense includes the authority to select the attorney who will defend the claim and to make other decisions that would normally be vested in the insured as the named party in the case." *Davalos*, 140 S.W.3d at 688 (citing *State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 627 (Tex.1998)). That said, in certain circumstances, "an insurer may not insist upon its contractual right

19

to control the defense." *Id.* If, under the insurance policy, the insurer has the right to control the defense of a case the insurer is defending on an insured's behalf, "the insured cannot choose independent counsel and require the insurer to reimburse the expense unless 'the facts to be adjudicated in the liability lawsuit are the same facts upon which coverage depends.'" *Rx.com Inc. v. Hartford Fire Ins. Co.*, 426 F.Supp. 2d 546, 559 (S.D. Tex. 2006) (quoting *Davalos*, 140 S.W.3d at 689).

Texas Disciplinary Rule of Professional Conduct 1.06(b) provides that, absent certain circumstances,

> a lawyer shall not represent a person if the representation of that person:
> (1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm; or
> (2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests.

Tex. Disciplinary Rules of Prof'l Conduct R. 1.06(b), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A. Comment 17 to rule 1.06 explains, "Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with great caution, however, for it can be misused as a technique of harassment." *Id.* R. 1.06 cmt. 17.

"A party moving for disqualification based on a violation of a disciplinary rule must 'establish with specificity' that the disciplinary rule was violated." *In re*

20

*Thetford*, 574 S.W.3d 362, 373–74 (Tex. 2019) (orig. proceeding) (quoting *Spears*, 797 S.W.2d at 656); *see In re N.P.H.*, No. 09-15-00010-CV, 2016 WL 5234599, at *9 (Tex. App.—Beaumont Sept. 22, 2016, no pet.) (mem. op.) (noting specificity requirement).

> If the claimed conflict relies merely on allegations of unethical conduct or on evidence showing only a remote possibility that a lawyer has violated a disciplinary rule or ethical rule, courts generally require that a party that files the motion to disqualify to produce evidence demonstrating that the moving party will be actually prejudiced by a decision denying the motion.

*In re Ace Real Prop. Invests., LP*, 2018 WL 915192, at *2 (Tex. App.—Beaumont Feb. 15, 2018, orig. proceeding) (mem. op.) (quoting *In re N.P.H.*, 2016 WL 5234599, at *8). "Even if a lawyer violates a disciplinary rule, the party requesting disqualification must demonstrate that the opposing lawyer's conduct caused actual prejudice that requires disqualification." *In re Nitla S.A.*, 92 S.W.3d at 422 (citations omitted); *see also In re Users Sys. Servs., Inc.*, 22 S.W.3d 331, 336 (Tex. 1999) (orig. proceeding) (where law firm may have violated "spirit" of the rule, the attorney's actions "did not cause any prejudice that would require disqualification").

## B. Analysis: As to the Evertons' Motion to Disqualify

### 1. Alleged Disqualification Under the Independent Counsel Rule

Here, the Evertons attempted to disqualify Taboada's counsel retained by the insurance company based on the independent counsel rule. In the trial court, Taboada

21

responded that the Evertons did not have standing to disqualify Taboada's counsel retained by the insurer in this case. As to whether the Evertons have standing to seek disqualification of Taboada's insurance-retained counsel based on the independent counsel rule, we agree with Taboada.

The record before us shows the insurance policy at issue was issued to Orozco and covered Taboada. Thus, it was a contract between Orozco and Taboada and their insurer, Mid-Century. *See Ulico Cas. Co.*, 262 S.W.3d at 778. As noted above, courts have explained that "[w]hether an insurer has the right to conduct its insured's defense is a matter of contract." *Davalos*, 140 S.W.3d at 688. Here, that meant under the policy at issue whether the insurance company could insist on defending the suit with counsel of their choice was a matter of contract between Orozco, Taboada, and Mid-Century. *See id.*; *see also Ulico Cas. Co.*, 262 S.W.3d at 778.

The Evertons do not contend that they were in privity with Orozco and Taboada's insurance carrier nor do they assert they are third-party beneficiaries under the insurance policy. That said, by seeking disqualification of Taboada's counsel retained by the insurer, they attempt to control how the defense is conducted under the policy. Since the Evertons have not proven privity to the agreement or that they are third-party beneficiaries, they cannot enforce a contractual right between Orozco, Taboada, and the insurance company. *See Debes*, 2014 WL 3384679, at *2. Although they have not sued, the Evertons seek to enforce—by way of

22

disqualification—how the insurance carrier defends the suit or who may represent Orozco and Taboada under the policy. The general rule in Texas prohibits the Evertons from doing so as a third party. *See In re Ill. Nat'l Ins. Co.*, 685 S.W.3d at 835–36. As strangers to the insurance policy, there is not a justiciable controversy between the Evertons and Orozco and Taboada's insurance carrier. *See Lynch*, 595 S.W.3d at 685; *Debes*, 2014 WL 3384679, at *2. We conclude the Evertons lack standing to seek disqualification of Taboada's carrier-selected attorney based on the independent counsel rule, which is a matter of contract. *See Davalos*, 140 S.W.3d at 688 (stating that whether an insurer has the right to conduct its insured's defense is a matter of contract); *see also In re Ill. Nat'l Ins. Co.*, 685 S.W.3d at 835–36; *Debes*, 2014 WL 3384679, at *2.

### 2. Rule 1.06(b)

The Evertons also sought to disqualify Taboada's counsel under Texas Disciplinary Rule of Professional Conduct 1.06(b). While that rule allows opposing counsel to raise the question "[w]here the conflict is such as clearly to call in question the fair or efficient administration of justice," the comments to the rules instruct that such objections by opposing counsel "should be viewed with great caution" since it "can be misused as a technique of harassment." Tex. Disciplinary R. Prof'l Conduct 1.06 cmt. 17.

The trial court, in considering the Evertons' Motion to Disqualify opposing counsel based on rule 1.06(b), should have viewed it "with great caution." *See id.* The Evertons contend that lawyers who violate conflict-of-interest rules must be disqualified, "because there is an irrebuttable presumption that a lawyer obtains a client's confidential information during representation." We agree that there is such a presumption, yet before it applies, the Evertons must first show that Taboada's attorney violated the conflict-of-interest rules. *See In re Thetford*, 574 S.W.3d at 373 (stating that "lawyers who violate the conflict of interest rules must be disqualified because there is an irrebuttable presumption that a lawyer obtains a client's confidential information during representation[]").

In their Motion to Disqualify, they contend "carrier-selected counsel would face inherent conflicts between duties to Taboada and Orozco as clients and responsibilities to Mid-Century as the source of business." We first note that Orozco has retained his own independent counsel. This generic statement about conflicts Taboada's carrier-selected counsel "would face" does not contain the requisite specificity to show how counsel or her law firm has violated rule 1.06(b). *See id.* at 373–74; *Spears*, 797 S.W.2d at 656; *In re N.P.H.*, 2016 WL 5234599, at *9. They point to what they characterize as a "Letter Pleading" filed by Taboada, claiming the insurance company coerced her statements. Yet, they do not explain whether this particular attorney or particular law firm investigated this for the insurance company,

24

requested the statement, nor do they provide other details. The Evertons point to the carrier's reservation of rights letter to show this conflict, yet the Evertons' allegations of intentional torts are what jeopardized coverage and prompted the reservation of rights letter. Amanda Everton also "assisted" Taboada in filing the insurance claim, according to her Amended Affidavit, which she used to support the Motion to Disqualify. Given the circumstances, the trial court could have viewed their Motion to Disqualify Taboada's carrier-selected counsel as harassment or a dilatory tactic since nothing in the record shows that Taboada desired disqualification.

The Evertons also failed to show they have suffered "actual prejudice" that disqualification under rule 1.06(b) requires. *See In re Nitla S.A.*, 92 S.W.3d at 422 (citing *In re Users Sys. Servs., Inc.*, 22 S.W.3d at 336–37); *In re Ace Real Prop. Invests.*, 2018 WL 915192, at *2. The Evertons argued in their Motion to Disqualify that carrier-selected counsel could not fulfill their duties to Taboada and Orozco and that they have an economic interest in Taboada's and Orozco's coverage under the policy. The Evertons are concerned about their ability to collect a judgment absent insurance coverage but provide no evidence to substantiate these concerns. These concerns are speculative and do not rise to the level of showing "actual prejudice." *See In re Nitla S.A.*, 92 S.W.3d at 422; *see also In re Users Sys. Servs., Inc.*, 22 S.W.3d at 336–37; *In re Ace Real Prop. Invests.*, 2018 WL 915192, at *2.

25

We conclude that the Evertons have failed to show with specificity that Taboada's carrier-selected counsel and her law firm violated rule 1.06(b), and they have failed to show actual prejudice. *See In re Thetford*, 574 S.W.3d at 373–74; *Spears*, 797 S.W.2d at 656; *In re N.P.H.*, 2016 WL 5234599, at *9; *see also In re Nitla S.A.*, 92 S.W.3d at 422; *In re Users Sys. Servs., Inc.*, 22 S.W.3d at 336; *In re Ace Real Prop. Invests.*, 2018 WL 915192, at *2.

## C. Analysis: Orozco's Motion to Disqualify

### 1. Alleged Disqualification Under Independent Counsel Rule

Unlike the Evertons, Orozco, as the insurance policy holder, does have standing to enforce the policy terms and seek disqualification based on the independent counsel rule, which is a matter of contract. *See Davalos*, 140 S.W.3d at 688; *see also Ulico Cas. Co.*, 262 S.W.3d at 778. Orozco contends that he and Taboada should be permitted to select their own counsel at Mid-Century's expense. *See Rx.com, Inc.*, 426 F.Supp.2d at 559. That said, the record shows that Orozco in fact retained his own independent counsel, who answered on his behalf and cross-claimed against Taboada. Under these circumstances, we cannot say that he has shown the independent counsel rule necessitates disqualifying Taboada's carrier-selected counsel.

26

## 2. Rule 1.06(b)

Orozco also argued that Taboada's carrier-selected counsel should be disqualified under Rule 1.06(b). The allegations he makes regarding disqualification under rule 1.06(b) mirror those made by the Evertons. We again note that Orozco has retained his own independent counsel, and he does not allege that Taboada's carrier-selected counsel has appeared for or represented him. For the same reasons we outlined in our discussion of the Evertons' Motion to Disqualify under rule 1.06(b), we likewise conclude that Orozco failed to show with specificity that Taboada's carrier-selected counsel and her law firm violated rule 1.06(b). *See In re Thetford*, 574 S.W.3d at 373–74; *Spears*, 797 S.W.2d at 656; *In re N.P.H.*, 2016 WL 5234599, at *9. We also conclude he failed to show actual prejudice given Taboada's continued representation by carrier-selected counsel where Orozco has retained his own independent counsel. *See In re Nitla S.A.*, 92 S.W.3d at 422; *In re Users Sys. Servs., Inc.*, 22 S.W.3d at 336; *In re Ace Real Prop. Invests.*, 2018 WL 915192, at *2.

We overrule issues one and two. We hold that Appellants have failed to show that the trial court clearly abused its discretion when it denied their Motions to Disqualify Taboada's carrier-selected counsel. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker*, 827 S.W.2d at 839–40. Accordingly, we deny the petition for writ of mandamus.

## III. ISSUE THREE: DENIAL OF TEMPORARY INJUNCTION

In their third issue, Appellants contend the trial court abused its discretion by denying their Application for Temporary Injunction that sought to enjoin Taboada and Orozco from communicating with counsel retained by the insurance company and from communicating with the insurance company to preserve coverage. In support of this argument, they contend the trial court already found a probable right to recovery. Among other things, Taboada responds that their request for a temporary injunction constitutes an unconstitutional restraint on speech and interferes with her contractual obligations.

### A. Standard of Review and Applicable Law

"'As a rule, we only decide constitutional questions when we cannot resolve the issues on nonconstitutional grounds.'" *Phillips v. McNeill*, 635 S.W.3d 620, 630 (Tex. 2021) (quoting *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003)). "'A temporary injunction is an extraordinary remedy and does not issue as a matter of right.'" *Abbott v. Anti-Defamation League Austin, Sw., and Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (quoting *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (per curiam)). The applicant seeking a temporary injunction "must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *see also*

*Abbott*, 610 S.W.3d at 916. A temporary injunction applicant bears the burden of production to offer some evidence establishing a probable right to recovery. *In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex. 2002) (quoting *Camp v. Shannon*, 348 S.W.2d 517, 519 (Tex. 1961)). Showing (1) a probable right to recovery and (2) a probable imminent and irreparable injury both require the applicant to present evidence and, unlike "temporary restraining orders, cannot be based upon sworn pleadings or affidavits unless the parties so agree." *In re Marriage of Spiegel*, 6 S.W.3d 643, 645 (Tex. App.—Amarillo 1999, no pet.) (citations omitted); *see also Millwrights Local Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683, 685–87 (Tex. 1968) (holding that absent the parties' agreement, the proof required to support a temporary injunction "may not be made by affidavit," and a "sworn petition does not constitute evidence supporting" a temporary injunction); *Sanadco Inc. v. Hegar*, No. 03-14-00771-CV, 2015 WL 4072091, at *1 (Tex. App.—Austin July 3, 2015, no pet.) (mem. op.) ("Pleadings, even if sworn, affidavits, and legal arguments will not support injunctive relief unless the parties agree otherwise.").

We review a trial court's order denying a temporary injunction for an abuse of discretion. *See Abbott*, 610 S.W.3d at 916; *Walling*, 863 S.W.2d at 58. "To determine whether a trial court abused its discretion, we must decide whether the court acted without reference to any guiding rules or principles -- in other words,

29

whether the trial court's act was arbitrary or unreasonable so as to exceed the bounds of reasonable discretion." *NMTC Corp. v. Conarroe*, 99 S.W.3d 865, 868 (Tex. App.—Beaumont 2003, no pet.) (citing *Butnaru*, 84 S.W.3d at 211). "[I]f some evidence reasonably supports the court's ruling[,]" the trial court does not abuse its discretion. *Henry v. Cox*, 520 S.W.3d 28, 34 (Tex. 2017); *see also Abbott*, 610 S.W.3d at 916. "Without a reporter's record, we have no way to determine what evidence, if any, was adduced at the hearing, and therefore, whether the trial court abused its discretion." *Sanadco Inc.*, 2015 WL 4072091, at *2; *see also Lucas v. Savage*, No. 14-18-00836, 2019 WL 6317674, at *3 (Tex. App.—Houston [14th Dist.] Nov. 26, 2019, no pet.) (mem. op.) (explaining that because court lacked a reporter's record from the hearing on the application for injunction, there was no way to determine if appellant met his burden); *In re Marriage of Spiegel*, 6 S.W.3d at 646 ("Without a reporter's record we do not know what, if any evidence was presented to the trial court."). While the Rules of Appellate Procedure provide that the court reporter is responsible for preparing, certifying, and timely filing the reporter's record, that responsibility is conditioned on the appellant filing a notice of appeal, requesting the reporter's record be prepared, and making payment arrangements for the reporter's record. *See* Tex. R. App. P. 35.3(b); *In re Marriage of Spiegel*, 6 S.W.3d at 646.

## B. Analysis

The clerk's record establishes that the Evertons and Orozco filed an Application for Temporary Injunctive Relief supported by Amanda's Amended Affidavit, but absent the parties' agreement, this does not constitute evidence for purposes of supporting a Temporary Injunction. *See Millwrights Local Union No. 2484*, 433 S.W.2d at 685–87; *Sanadco Inc.*, 2015 WL 4072091, at *1; *In re Marriage of Spiegel*, 6 S.W.3d at 645. Nothing before us shows that the parties agreed to allow sworn pleadings or affidavits to constitute evidence supporting the Evertons' and Orozco's Applications for Temporary Injunction. Therefore, the Appellants were still required to present evidence at the hearing supporting their Application for Temporary Injunction showing a probable right to recovery and probable imminent and irreparable injury. *See Millwrights Local Union No. 2484*, 433 S.W.2d at 685–87; *Sanadco Inc.*, 2015 WL 4072091, at *1; *In re Marriage of Spiegel*, 6 S.W.3d at 645.

In this case, Appellants did not request the reporter's record. When this Court advised Appellants of the deadline to file their briefs, we noted that Appellants' docketing statement indicated no reporter's record would be filed. Absent a request and payment arrangements, the court reporter had no duty to file a reporter's record. *See* Tex. R. App. P. 35.3(b); *In re Marriage of Spiegel*, 6 S.W.3d at 646. Here, without a reporter's record, the record is void of evidence adduced at the temporary

31

injunction hearing. The record does not show how the Appellants met their burden entitling them to this extraordinary relief, and we conclude they have failed to establish the trial court abused its discretion in denying their Application for Temporary Injunction. *See Lucas*, 2019 WL 6317674, at *3; *Sanadco Inc.*, 2015 WL 4072091, at *1; *In re Marriage of Spiegel*, 6 S.W.3d at 645; *see also Abbott*, 610 S.W.3d at 916 (stating that a temporary injunction is extraordinary relief).

Appellants contend that in the "October 24, 2024[,] Agreed Temporary Injunction, the trial court found the Evertons demonstrated a probable right to recover on their causes of action." Importantly, the October 24, 2024 Agreed Temporary Injunction sought to enjoin entirely different activity, namely the flow of water onto the Evertons' property. In contrast, the Appellants' Application for Temporary Injunction which was denied and is now at issue in this appeal involves enjoining Taboada's and Orozco's communications—both with counsel and with their insurance company. To the extent Appellants contend the trial court's finding of a probable right to recovery supporting the Agreed Temporary Injunction should support the contested Temporary Injunction seeking to enjoin entirely different conduct, that argument lacks merit. Appellants provide no authority, and we have found none, that would indicate a trial court's finding of a probable right to recovery in the Agreed Temporary Injunction should carry over to a contested and separate temporary injunction seeking to enjoin different conduct.

32

We overrule issue three.

## IV. CONCLUSION

Having overruled the Evertons' and Orozco's issues on appeal, we affirm the trial court's denial of the application for temporary injunction and deny the petition for writ of mandamus.

AFFIRMED, PETITION FOR WRIT OF MANDAMUS DENIED.

W. SCOTT GOLEMON
Chief Justice

Submitted on August 25, 2025
Opinion Delivered December 18, 2025

Before Golemon, C.J., Johnson and Wright, JJ.